**UNITED STATES of America**

v.

**Terrell Henry HALLMAN, Appellant.**

**No. 15848.**

United States Court of Appeals
Third Circuit.

Argued May 25, 1966.

Decided Aug. 23, 1966.

Michael A. Querques, Orange, N. J.
(Querques & Isles and Harvey Weissbard, Orange, N. J., of counsel and on the brief), for appellant.

Robert A. Baime, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before KALODNER and HASTIE, Circuit Judges, and WRIGHT, District Judge.

## OPINION OF THE COURT

KALODNER, Circuit Judge.

The defendant, Hallman, was indicted on four counts charging bank robbery and possession, in violation of 18 U.S.C.A. § 2113(a)–(d), arising out of the robbery, on January 6, 1965, of the New Jersey Bank and Trust Company, Allwood Office, Clifton, New Jersey.

Prior to trial, Hallman moved to suppress evidence, i. e., thirteen twenty-dollar bills, obtained from him allegedly as a result of an illegal arrest and search of his person on January 29, 1965, the date alleged in the possession count of the indictment. This motion was denied after hearing. At the trial, the questioned bills were received in evidence against Hallman, over objection. The jury found Hallman guilty on the count charging possession, 18 U.S.C.A. § 2113(c), and

not guilty on the other counts of the indictment.

On this appeal from the judgment of conviction entered on the jury verdict, and sentence, Hallman reasserts the illegality of the manner in which the twenty-dollar bills were obtained from him. He further complains that (a) although in its answer to a bill of particulars the government denied that it had any confessions or admissions from him, it was permitted to introduce into evidence an exculpatory statement made by him which the government contended was false; (b) his identification by the robbed bank's employees was too speculative to be admitted; (c) remarks made by the prosecuting attorney were prejudicial; (d) the trial judge did not fairly state the evidence in answer to a question submitted by the jury during its deliberations; and (e) the evidence was inadequate.

We address ourselves to the question raised initially by the motion to suppress. On this score, we are of the opinion that the motion should have been granted and the evidence illegally obtained should not have been used against Hallman at the trial.

The critical events occurred on January 29, 1965. On that day, and for some time previous, Hallman had the status of a parolee under the New Jersey penal system. His parol officer was one Anthony Provenzano. On that day, also, Detective Trainor, of the New Jersey State Police, and Agent Lelwica, of the Federal Bureau of Investigation, were working together: each had been engaged in the investigation of bank robberies, and at least Lelwica had had Hallman under observation for some time.

At about 1:15 o'clock p. m., on January 29, Trainor and Lelwica spoke to Provenzano on the telephone. Provenzano was informed that there was reasonable information that Hallman was in violation of his parole in that he was associating with known criminals and was not gainfully employed. Provenzano understood that these officers wanted him to have Hallman come in so that they could speak to him and so that he could be asked to voluntarily submit to a "line-up." Specifically, Trainor admitted mentioning the "line-up" to Provenzano in the course of the telephone conversation. Provenzano told Trainor he would try to contact Hallman and have him come in, and that he would call Trainor back.

Provenzano spoke to his supervisor, who left the matter in his hands. He tried to reach Hallman by telephone at his home and, being unsuccessful, wrote him a letter. His purpose in doing this was to have Hallman come in so that he could inquire concerning violation of his parole and to ask him to voluntarily submit to a "line-up." Provenzano then called Trainor. According to Trainor, Provenzano told him that he was unable to reach Hallman and that in the event that he, Trainor, chose to seek Hallman out at his home or elsewhere or if he was to come across Hallman anywhere up to four o'clock, when Provenzano would leave his office, he was to bring Hallman to Provenzano. Provenzano was uncertain whether he had told Trainor to bring Hallman in or to have him report, but he did not tell Trainor to arrest or apprehend Hallman, nor was Hallman's parole then revoked.

Trainor requested Lelwica to assist him in searching for Hallman, because Lelwica was familiar with Hallman's general neighborhood and "hangouts." Lelwica, accompanied by another agent occupied one vehicle, and Trainor, accompanied by two Englewood Police Department officers, occupied another. Within fifteen minutes, Lelwica observed a vehicle he recognized as belonging to Hallman's girl at the intersection of Franklin and Lake Streets, Belleville. Lelwica's vehicle entered Lake Street, a one-way three lane street with parking on both sides, and pulled over to the curb. Trainor's vehicle pulled up on Lake Street alongside Lelwica's car. Trainor said that as he turned into Lake Street he observed Hallman come out of a store and get behind the wheel of his girl's car. Lelwica identified Hallman and the vehicle, and Trainor said that he would

wait for Hallman to pull up in back of him, which he did. Lelwica testified that he saw Trainor "place Mr. Hallman under arrest." Trainor testified that he identified himself to Hallman and asked him to get out of his car. Hallman did so and was "frisked" by one of the officers. Trainor testified he then "advised" Hallman "to get in my car and we'd transport him" to Provenzano's office. Hallman was then walked to Trainor's car by the three officers and placed in the rear seat between two of them. Lelwica then left his vehicle and asked Trainor if he could ride with them. Trainor agreed, and they then proceeded to Provenzano's office where Hallman was interviewed by Provenzano in the presence of Trainor, Lelwica and the other officers.

Hallman admitted to Provenzano that he had obtained a loan without notice to Provenzano, and that he had associated with one Raymond Freda. As a result of a statement by Lelwica to Provenzano, Provenzano requested Hallman to exhibit the money he had on him. Hallman showed him a hundred-dollar bill and the thirteen twenty-dollar bills here involved. Provenzano took the bills and handed them to Trainor who compared them with lists of "bait" money and found that the twenties matched bills reported stolen from the Allwood Clifton bank. Provenzano thereupon issued a warrant for the arrest of Hallman.

On the basis of the foregoing evidence, we have no hesitancy in concluding that Hallman was taken into custody and restrained of his freedom. We do not understand the government to deny that an arrest occurred. Moreover, that condition of custody patently continued throughout the interview with Provenzano, being emphasized by the presence of the arresting officers and their participation in the interview.

 There is no evidence, nor is there any assertion, that either Trainor or Lelwica had probable cause to believe that Hallman had committed, or was then committing, an offense. Hallman was not without basic rights because he was

a parolee. Martin v. United States, 183 F.2d 436, 439 (4 Cir. 1950), cert. den. 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654; Brown v. Kearney, 355 F.2d 199, 200 (5 Cir. 1966). Here, again, the government does not contend otherwise. The government does assert that Hallman's status as a parolee should be taken into consideration in determining the reasonableness of the arresting officers' conduct. Martin v. United States, supra. The facts of that case, however, are so markedly different from those here involved that discussion is not required.

It is not argued that violation of parole, of itself, constituted an offense under the New Jersey law. However, the statutory parole procedures were not utilized. Hallman's parole officer, Provenzano, did not act pursuant to N.J.S.A. Sec. 30:4–118, if applicable, or Sec. 30:4–123.22, both of which are relied upon by the government, to apprehend Hallman until he actually issued the warrant for his arrest. And that was not done until Provenzano was made aware of the fact that the twenty-dollar bills obtained from Hallman were listed as stolen. Thus, the warrant was the last in the series of operative facts.

It is to be noted that Provenzano's instruction to Trainor, that if he chose to seek out Hallman and should find him before four o'clock he should bring Hallman in to Provenzano's office, does not constitute a direction to arrest Hallman. In any event, Provenzano could not give such direction without issuing a warrant, and he himself testified that he did not use the words "arrest" and "apprehend". Further, nothing in the record indicates an existing emergency or facts which would justify the conclusion that time was of the essence.

Accordingly, we conclude that the arrest of Hallman was invalid.

 To reach the conclusion that the bills obtained from Hallman should have been suppressed, we do not rest solely upon the proposition that any search preceded by an invalid arrest is unreasonable. Rios v. United States,

364 U.S. 253, 261–262, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960). Notwithstanding that it was Provenzano who requested Hallman to produce the money from his pockets, the act was the further act of Trainor and Lelwica, at whose instance it was performed, and to whom the money was turned over forthwith for examination and comparison with lists those officers had with them.

Since each case depends upon its peculiar facts for resolution, we do not mean to be understood to rule so as to prohibit proper cooperation and assistance of law enforcement and administrative officers among themselves. However, we do hold in this instance, that the invalid arrest of Hallman, his immediate transportation, in custody, to Provenzano's office, the continuation of the state of arrest and the effective search for, and turnover, of Hallman's money at Trainor's and Lelwica's instance, were part and parcel of the same transaction, and in this respect Provenzano was nothing more than the agent, tool, or device, of Hallman's custodians. The veil afforded by Provenzano's position as Hallman's parole officer cannot here serve as a shield against what was plainly the action of the arresting officers to effect an illegal search.

The thirteen twenty-dollar bills having been illegally obtained from Hallman, the motion to suppress should have been granted, and the bills should not have been received in evidence against him at his trial. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927); Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); Rios v. United States, supra.

The view stated makes unnecessary discussion of the other points presented on this appeal.

For the reasons stated, the judgment of conviction will be set aside, and the cause remanded to the District Court for further proceedings not inconsistent herewith.