**UNITED STATES of America ex rel.
Joseph RANDAZZO, Petitioner,**

v.

**Hon. Harold W. FOLLETTE, Warden,
Green Haven Prison, Stormville,
New York, Respondent.**

No. 68 Civ. 93.

United States District Court
S. D. New York.

March 26, 1968.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, for respondent; Joel H. Sachs, Asst. Atty. Gen., of counsel.

Joseph Randazzo, pro se.

WYATT, District Judge.

This is an application for a writ of habeas corpus (28 U.S.C. §§ 2241, 2242) by Joseph Randazzo, who is in the custody of the penal authorities of New York at Green Haven Prison in Stormville, Dutchess County, in this District. Randazzo is acting for himself, without the help of counsel; by order of Judge Motley filed January 9, 1968, he was authorized to prosecute this proceeding without prepayment of fees, etc. (28 U.S. C. § 1915(a)).

There was a judgment of conviction of applicant, on his plea of guilty, of attempted possession of a narcotic drug (Penal Law, McKinney's Consol.Laws, c. 40, § 1751(5) as it then stood) on December 20, 1962, in the New York County Supreme Court (Davidson, J.). This conviction is sometimes referred to

as the "narcotics" conviction. The sentence was imprisonment for from three to six years. Randazzo being then a second felony offender (Penal Law § 1941 as it then stood).

The detailed background of the first felony conviction of Randazzo and also of the narcotics conviction, as well as the history of the appeals and other proceedings in the state courts, are given in an opinion filed today, D.C., 282 F.Supp. 2, with an order denying the relief requested in an application by Randazzo for a writ of habeas corpus in respect of the first felony conviction (the "manslaughter" conviction).

In July 1962, Randazzo was not in physical custody under the sentence imposed on his first felony conviction; he had been released on parole.

In July 1962, information reached the Parole Board that Randazzo was, among other things, associating with a major narcotics violator and was believed to be in the narcotics traffic. The Board on July 10, 1962 issued a warrant for his retaking (Correction Law, McKinney's Consol.Laws, c. 43, § 216).

On July 12, 1962, a parole officer and one or more police detectives went to the apartment building on Rivington Street on the lower East Side where Randazzo lived; in his third floor apartment he was arrested by the parole officer under authority of the Parole Board warrant. At the same time the parole officer searched the premises and in the bedroom of Randazzo found 31 ounces of heroin concealed in a hollow in a dresser drawer; the parole officer did not have a search warrant.

When the narcotic drug was discovered, the parole officer turned Randazzo over to the police detectives for prosecution; Randazzo was then taken to the Manhattan House of Detention (125 White Street) to await grand jury action and the Board of Parole warrant was filed at the House of Detention.

An indictment (Index No. 3035/1962) charging Randazzo in two counts with possession of narcotic drugs with intent to sell (Penal Law § 1751(2), as it then stood) and with possession of narcotic drugs (Penal Law § 1751(3) as it then stood) was returned by a New York County grand jury on August 31, 1962.

Randazzo (or his family) retained counsel, Jesse Zaslav, Esq., who moved to suppress as evidence the heroin found in his bedroom on the ground that the search without warrant had violated constitutional rights. There was a hearing in the Supreme Court (Davidson, J.) and on November 15, 1962 the motion was denied with an opinion (People v. Randazzo, 37 Misc.2d 80, 234 N.Y. S.2d 740). Randazzo then pleaded guilty to a lesser included offense on November 29, 1962.

It is proper to entertain the present application on the merits, this for substantially the same reasons given in the opinion filed today with respect to the manslaughter conviction.

The attack on the narcotics conviction is based on the claim that the heroin was found in his apartment as a result of a search which violated the Fourth Amendment to the federal Constitution. This is the same claim presented to the state courts; applicant has submitted his state court briefs.

█ I have read the stenographic minutes (62 pages) of the evidentiary hearing in the New York Supreme Court on the motion to suppress made by Randazzo. The hearing was held on October 24, 1962; Randazzo was represented by counsel and himself testified. The state court "after a full hearing reliably found the relevant facts" and no hearing in this Court is required. Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). See also 28 U.S.C. § 2254(d) effective November 2, 1966.

The state court (37 Misc.2d 80, 234 N.Y.S.2d 740) found that an arrest warrant was issued by the Parole Board for Randazzo as a parole violator, that the information on account of which the Parole Board issued the warrant was "that Randazzo had consorted with a con-

victed felon, a narcotics violator, that Randazzo was suspected of being involved in the narcotics traffic, that he was not working and maintained late hours, and although not working had visited a bar late at night" (234 N.Y.S.2d at 741), that the warrant was executed on July 12, 1962 when Randazzo was arrested in his apartment, that the entry of the officers into the apartment was with the consent of Randazzo, that before he was arrested he was asked and freely answered questions about his "consorting with known criminals" (234 N.Y.S.2d at 742), that he was told that he was being arrested "for a violation of parole for consorting with known criminals" (234 N.Y.S.2d at 742), and that following his arrest the apartment was searched and the heroin discovered.

There was in evidence at the state court hearing the agreement made by Randazzo with the Parole Board and signed by him as a condition to secure his release from prison on parole. Among other things, he promised not to change his residence without the permission of his parole officer and that he would "permit" the parole officer "to visit me at my residence"; he promised not to use or sell narcotics, not to use intoxicating liquors, not to have sex relations with any woman not his lawful wife, not to associate with any person having a criminal record, etc.

There was evidence at the state court hearing that just before his arrest Randazzo admitted that he had been associating with a man known while in prison.

■ The duty of this Court is "to apply the applicable federal law to the State court fact findings independently". Townsend v. Sain, above, 372 U.S. at 318, 83 S.Ct. at 760.

■ It is also clear that Randazzo may resort to this Court despite his plea of guilty in the state court. United States ex rel. Molloy v. Follette, 391 F.2d 231 (2d Cir. February 27, 1968).

After consideration of the merits, however, it is concluded that the search of his apartment violated no constitutional rights of Randazzo.

Randazzo had no right to be released from physical custody. His release on parole was an act of grace and favor to him by the Parole Board.

The Parole Board has the discretion to determine "what prisoners * * * may be released on parole and when and under what conditions." Correction Law § 210. The Parole Board is directed to release on parole "only if * * * of opinion that there is a reasonable probability that * * * he will live and remain at liberty without violating the law * * *". Correction Law § 213. Under New York law, Randazzo on parole remained "in the legal custody of the warden". Correction Law § 213. The federal statute is in substance the same. 18 U.S.C. § 4203; see Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247 (1923). Under New York law, the division of parole has "the duty of supervising all prisoners released on parole * * *, of making * * * investigations, * * * of determining whether violation of parole conditions exists * * *". Correction Law § 210.

In Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), the Supreme Court dealt with Escoe, who had been placed on probation when a sentence to imprisonment was suspended after conviction of an offense in a federal court. Thereafter the court issued a warrant for the arrest of Escoe and made an order revoking suspension of his sentence. Escoe was arrested and was then taken directly to a federal prison. The statute then (18 U.S.C. § 725) as now (18 U.S.C. § 3653) provided that after arrest the probationer shall be "taken before the Court". The Supreme Court found that the intent of the statute was for the court to make an "inquiry" and for the probationer to be able "to explain away the accusation". The Supreme Court declared the commitment of Escoe illegal but on the basis of the *statute* specifically rejecting all *constitutional* claims for Escoe, Mr. Justice

Cardozo said (295 U.S. at 492, 493, 55 S.Ct. at 819):

"In thus holding we do not accept the petitioner's contention that the privilege has a basis in the Constitution, apart from any statute. Probation or suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose."

If there be any difference between one on probation and one on parole, so far as standing to invoke constitutional rights is concerned, the difference should favor the one on probation. The probationer has never entered prison; the parolee by becoming an inmate of a prison has thereby certainly lost some constitutional rights, including the protection at least while in prison against unreasonable searches and seizures. Lanza v. State of New York, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962). See Holtzoff, The Power of Probation and Parole Officers To Search and Seize, XXXI Federal Probation 3–7 (1967); Note, Parole, etc., 38 N.Y.U.L.Rev. 702 (1963); Note, Parole Revocation Procedures, 65 Harv. L.Rev. 309, 310–12 (1951).

■■■ The Fourth Amendment protection against "unreasonable searches and seizures" by its terms extends to one released on parole but in determining whether a search is "unreasonable" the parole status is a powerful circumstance to be considered. Martin v. United States, 183 F.2d 436, 439 (4th Cir.), cert. denied 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654 (1950). Any search by a parole officer in good faith to determine whether a paroled prisoner is complying with the conditions of his release would in my opinion be reasonable. Such a search could become "unreasonable" only if made too often or if made at an unreasonable hour or if unreasonably prolonged or for other reasons establishing arbitrary or oppressive conduct by the parole officer.

The best discussion of this question is in People v. Hernandez, 229 Cal.App.2d 143, 40 Cal.Rptr. 100, a 1964 decision of the California District Court of Appeal (the intermediate appellate court) for the Third (Sacramento) District. Hernandez was on parole from a state prison. A narcotics agent (apparently state) received information from an informer that Hernandez might have narcotics; the agent relayed this information to the parole officer for Hernandez. This parole officer, with four narcotics agents, then went, without an arrest or search warrant, to the parking lot where Hernandez kept his automobile for the purpose of searching that car. When Hernandez appeared, the parole officer searched the car and found heroin. Prosecution of Hernandez for possession of the heroin followed. At the trial, use of the heroin as evidence was objected to on the claim that the search violated constitutional rights. In this connection, the state declined to give the name of the informer. The heroin was admitted into evidence and Hernandez was convicted.

Earlier California cases had held that search without warrant of the residence of a prisoner on parole, even in his absence, was reasonable as proper supervision and surveillance of a parolee. These cases appear to have assumed the necessity of some probable cause for the search. Then came a decision in 1958 in the case of Priestly v. Superior Court of City and County of San Francisco, 50 Cal.2d 812, 330 P.2d 39 holding that if probable cause depended on an informer, the identity of the informer must be given. Since the state had declined to identify the informer against Hernandez, the search was illegal if its legality depended on the existence of probable cause. The District Court of Appeal held that no warrant, no consent, and no probable cause was needed to authorize a search by a parole officer of the person, home or effects of a parolee. The conviction was therefore affirmed. The relevant discussion in the Court's opinion was as follows (40 Cal.Rptr. at 103–104):

"In this case, parole officer Boulton professed no prior determination to take Hernandez into custody. Because

of information emanating from an anonymous source, he decided to search the parolee's car for narcotics and enlisted the help of other officers to that end. Search and not arrest was his immediate purpose. Weighed on the standard scale, the officer's entry into the automobile in a direct quest for incriminating evidence possessed dubious legality. * * *

"These standard concepts of arrest and probable cause for arrest have little relevance as between correctional authorities and paroled prisoners. The parolee, although physically outside the walls, is still a prisoner; his apprehension, although outwardly resembling arrest, is simply a return to physical custody. * * * To weigh retaking of a parole on scales calibrated for standard cases of arrest and probable cause is to compare incomparables. The decisive question in this case is not whether the parole officer had probable cause for an arrest and incidental search, but whether his paroled prisoner could invoke constitutional barriers against the search.

* * * * * *

"Inmates of state prisons do not have the usual array of federal and state constitutional rights guaranteed to nonincarcerated citizens. * * * Prison authorities may subject inmates to intense surveillance and search unimpeded by Fourth Amendment barriers (Lanza v. New York, 370 U.S. 139, 143, 82 S.Ct. 1218, 8 L.Ed.2d 384.) Although a parolee is not a prison inmate in the physical sense, he is constructively a prisoner under legal custody of the State Department of Corrections and may be returned to the prison walls without notice and hearing. * * * In actual fact he moves about in free society, fettered by the conditions and restrictions of his parole. Thus his status differs somewhat from that of unreleased prisoners. To an extent not necessary to ascertain here, he may be able to assert constitutional guaranties and safeguards against arbitrary or oppressive official action. * * * So far as necessary for the maintenance of parole guardianship, his status as a prisoner is no different than one who remains in confinement. His release entails calculated social risks. Recidivism is all too common. As a rough statistic, approximately one-half of all California parolees return to prison within five years, either as the result of parole revocation or a new felony commitment. (Table 18, Report, Director of Corrections, Mar. 4, 1964, filed with Assembly Committee on Criminal Procedure; see also, p. 71, California Prisoners, 1960, Dept. of Corrections.) At least as significant is the obverse statistic, that approximately half of the parolees reach the goal of rehabilitation. Criminal acts by parolees evoke public resentment and criticism of the parole authorities, usually stemming from failure to understand the purpose and operation of an enlightened parole system. Close supervision, surveillance and control not only minimize the social risks inherent in parole, but safeguard the system for the sake of those who make good. Intense scrutiny by the correctional authorities is a vital ingredient of a publicly acceptable parole system. For the purpose of maintaining the restraints and social safeguards accompanying the parolee's status, the authorities may subject him, his home and his effects to such constant or occasional inspection and search as may seem advisable to them. Neither the Fourth Amendment nor the parallel guaranty in article I, section 19, of the California Constitution block that scrutiny. He may not assert these guaranties against the correctional authorities who supervise him on parole. (See Story v. Rives, 68 App.D.C. 325, 97 F.2d 182, 188.) If this constitutional fact strips him of constitutional protection against invasions of privacy by his parole officer, the answer is that he has at least as much protection as he had within the prison walls. He did

not possess this guaranty in prison and it was not restored to him when the gates of parole opened."

The court considered whether the results of a search by a parole officer could be used only to show a violation of parole or could be used in a prosecution for a separate offense. Since the search by the parole officer was lawful, logic compelled the conclusion that it could be used wherever relevant, "it was available to enforce any law which might have been violated" (40 Cal.Rptr. at 104).

Evidently there was affirmance of People v. Hernandez by the Supreme Court of California in an unreported decision. The Supreme Court of the United States denied certiorari (381 U.S. 953, 85 S.Ct. 1810, 14 L.Ed.2d 725 (1965)), referring to the lower court decision as "Sup.Ct.Cal."

The principle established by People v. Hernandez has been followed in California. People v. Limon, Cal.App., 63 Cal. Rptr. 91 (Court of Appeal, Second (Los Angeles) District, Oct. 30, 1967, Rehearing denied Nov. 29, 1967, Hearing denied Jan. 24, 1968); People v. Gastelum, 237 Cal.App.2d 205, 46 Cal.Rptr. 743 (District Court of Appeal, Fifth (Fresno) District, 1965); People v. Quilon, 245 Cal.App.2d 624, 54 Cal.Rptr. 294 (District Court of Appeal, First (San Francisco) District, 1966).

A majority of the Court of Appeals of New York apparently felt, in agreement with the California decisions, that "as a parolee" (15 N.Y.2d 526, 254 N.Y.S.2d at 100, 202 N.E.2d 549) Randazzo could not object to a search of his apartment by his parole officer; then Chief Judge Desmond upheld the search as incident to the arrest of Randazzo; then Judge Fuld dissented.

Two thoughtful opinions by lower New York courts follow the California decisions. People v. Chinnici, 51 Misc.2d 570, 273 N.Y.S.2d 538 (Nassau Cty.Ct. 1966); People v. Langella, 41 Misc.2d 65, 244 N.Y.S.2d 802 (Sup.Ct.Kings Cty. 1963). See Note, Probationer's Protection Against Search and Seizure Limited in New York, 18 Syracuse L.Rev. 647 (1967).

█ On principle and authority, it is my conclusion that a search by a parole officer of the person, residence, or effects of a parolee is not in violation of the Fourth Amendment because done without a warrant, without consent, and without probable cause.

I do not read United States v. Hallman, 365 F.2d 289 (3d Cir. 1966) as to the contrary, largely because the parolee had been illegally arrested by a police officer and an FBI agent and not by his parole officer and because the part played by the parole officer in the search was that of "agent, tool, or device" of the arresting officers who used the parole officer as a "veil" to "shield" their action to make "an illegal search" (365 F.2d at 292).

Brown v. Kearney, 355 F.2d 199 (5th Cir. 1966), has a dictum that a parolee is entitled to protection from an "illegal" search; it does not state what kind of search would be "illegal".

The decision in Story v. Rives, 68 App. D.C. 325, 97 F.2d 182 (1938) may support the conclusion here reached.

I distinguish United States v. Lewis, 274 F.Supp. 184 (S.D.N.Y.1967) because the arrest and search were made, not by a parole officer in the supervision of a parolee but by FBI agents who are federal law enforcement officers. Some of the views expressed by Judge Mansfield may be contrary to my conclusion and, if so, with great deference to an able and learned judge, I cannot follow those views.

In the case at bar, there is more to support the validity of the search. The agreement made by Randazzo to procure his release was a consent to a search of his residence premises by a parole officer at reasonable hours. While the agreement does not specifically state that consent to a search is given, such seems to me the clear meaning of the permission in the agreement "to visit me at my residence". The purpose of such visitation is to enable the parole officer by ob-

servation to find out whether Randazzo was violating his parole. It would be impossible effectively to supervise paroled persons if a search could only be made after establishing probable cause and securing a search warrant.

Aside from the agreement at the time of his release from prison, Randazzo consented to the entry of the parole officer into his apartment and consented to the search. From the record at the suppression hearing in the state court, I so find. Moreover, it is significant that according to the unchallenged testimony of the parole officer, he was the only one who searched and found the heroin.

Finally, the arrest of Randazzo as an admitted parole violator was legal and the search incident thereto was likewise legal. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1963); Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960).

The relief requested in this application for a writ of habeas corpus is denied and the application is dismissed.

So ordered.