Archibald C. Wemple, J.
A hearing on the motion to suppress evidence herein was held in the Schenectady County Court (Archibald C. Wemple, J.) on March 25, 1970. The above-named defendant was indicted by the G-rand Jury of the County of Schenectady of seven counts of burglary in the third degree, two counts of grand larceny, third degree, six counts of petit larceny, and one count of criminal possession of stolen property in the first degree, arising out of certain incidents which occurred December 3, 1969 and December 4, 1969, at professional offices in a building known as 600 Franklin Street, Schenectady, New York.
*53 The testimony at the hearing indicates that the above-named defendant had been released on parole on June 24, 1969, and had taken up residence at 321 Summit Avenue, Schenectady, New York.
The testimony further shows that following break-ins at a downtown office building on December 3, 1969 and December 4, 1969, the Schenectady police received ‘ ‘ information ’ ’ that the defendant had in his possession some of the burglarized articles. Thereupon, on December 5, 1969, the Schenectady police contacted the Parole Department in Albany by telephone. Then, later that same day, Jay Trembly, a New York State parole officer, together with Schenectady police officers, called at the defendant’s home. Upon arrival, the defendant, on being informed of their intent to search his apartment, refused admittance to the officers. The parole officer then informed the defendant that such a refusal to obey the instructions of a parole officer would be a violation of parole and would subject him to immediate apprehension. The defendant then apparently relented and permitted the parole officer and the police to enter his apartment and make the search. There is no contention by the parole officer or the police that a search warrant was ever requested or obtained.
It further appears that upon entry one of the police officers informed the defendant of his constitutional rights. The parole officer and the policemen testified that they found many items consisting of an electric microscope, radios, speakers, two clarinets, a camera, a clock, tape recorder and a portable typewriter in the defendant’s apartment.
As an explanation, the defendant stated to the officers that he had purchased these items from an unidentified person for $100. Later, at police headquarters, the defendant gave a different version and said that several people from Albany had stolen the items and had given them to him.
In his affidavit, the defendant alleges that the search and seizure were unlawful because neither the parole officer nor the Schenectady policemen had a search warrant. However, the memorandum of the defendant on this motion attacks the search and seizure on other and additional grounds such as that the search and seizure were conducted without defendant’s consent and that the search was not incidental to a valid arrest.
Parole Officer Trembly testified that the defendant, on June 23, 1969, signed a parole release agreement, Form IS 10, as is required by the Division of Parole of all persons released on parole pursuant to section 215 of the Correction Law. Trembly also testified that rule three of the parole release agreement *54 reads as follows: “ I will carry out the instruction of my parole officer, report as directed and permit him to visit me at my residence and employment. I will not change my residence and employment without first securing permission of my parole officer. I understand I am in the custody of the Board of Parole. I hereby consent to any search of my person, residence, or any property or premises under my control which the Board of Parole, or any of its representatives, may see fit to make at any time in their discretion ’ ’.
“ By accepting the privilege of parole, a prisoner consents to the broad supervisory and visitorial powers which his parole officer must exercise over his person and property until the time his sentence shall have expired or been terminated.” (People v. Randazzo, 37 Misc 2d 80, 82, affd. 20 A D 2d 850, affd. 15 N Y 2d 526.)
As stated above, the defendant at first resisted the visit and search of Parole Officer Trembly. Such a refusal would have been a violation of the parole release agreement. When the defendant was so informed by Parole Officer Trembly, he then allowed the officers entry to his apartment. This “ consent to search ”, if any, was involuntary in that the defendant was told that he would be arrested if the search were not permitted. The defendant did not waive his constitutional rights to be free of unreasonable search and seizure by this reluctant consent. There is a strong presumption against consent or waiver of a defendant’s constitutional right to be free of unreasonable search and seizure. (Johnson v. Zerbst, 304 U. S. 458, 464.)
It further appears that there was no arrest of the defendant until after the search was made. Therefore, it cannot be contended the search herein was incidental to a valid arrest.
The defendant was adjudicated a youthful offender by this court on August 10, 1967, and was sentenced on August 16, 1967, to an institution under the jurisdiction of the Department of Correction for an indefinite term at the reception center, Elmira, New York, pursuant to article 3-A of the Correction Law. After commitment, and after classification, at the reception center, male offenders between the ages of 16 and 21 may be transferred from the reception center to other institutions for confinement, program planning and transfer. Subdivision 2 of section 61 of the Correction Law provides that the term of imprisonment not fixed by the court “ shall be terminated by the board of parole * * * in the same manner as though such person had been sentenced * * * by the provision of section twenty-one hundred eighty-four-a of the penal law.”' Section 2184-a of the same law provides that such term of *55 imprisonment shall he known as a “ reformatory term, and shall be terminated by the board of parole * * * in the ease of any person convicted of a felony, such term shall not exceed five years and in the case of any person convicted for any other offense or for a misdemeanor, the term shall not exceed three years.”
The term of imprisonment of this defendant had not been terminated on December 5,1969, (the day the search and seizure took place) and, therefore, was still in the custody of the Parole Department. Section 213 of the Correction Law provides that a parolee “ shall remain, while thus on parole in the legal custody of the board of parole until the expiration of the maximum term or period of the sentence or return to an institution under the jurisdiction of the commissioner of correction.” A parolee is still in legal custody. (People ex rel. Natoli v. Lewis, 287 N. Y. 478.) Constructive custody is continuous during the period of parole subject to being reduced to actual custody. (People ex rel. Cecere v. Jennings, 250 N. Y. 239.) This may be done by action of the parole board despite the fact that the board acted upon grounds that would not support a conviction. (People ex rel. Natoli v. Lewis, supra.) “Clearly, whatever constitutional rights a parolee may enforce, they are not equal to the rights enjoyed by one not under a similar disability * * * undoubtedly he is subject to a search that would be impermissible in the ordinary situation”. (People v. Santos, 31 A D 2d 508, 509; People ex rel. Ochs v. La Vallee, 33 A D 2d 80.) The protection afforded by the Fourth Amendment is only against unreasonable searches and what was reasonable in the case of a parolee is not the same as was reasonable in the case of another. (United States ex rel. Randazzo v. Follette, 282 F. Supp. 10.)
By his prior convictions, a parolee has been removed from society; and, in granting him the privilege of parole, society has conferred a benefit, and society has a right to make sure that he is worthy of it. Society’s assurance in this regard is parole supervision (Correction Law, §§ 215-218), and the surrender of constitutional rights to insure adequate control at all times is not out of line with reason. Here, we have a balancing of rights — the right of society to be protected on the one hand, and the convicted criminal, parolee’s right to be free from unreasonable searches on the other.
“ The very concept of parole entails a degree of supervision of parolees consonant with its purposes. Included within that supervision would be such searches as would reasonably be called for.” (People v. Santos, 31 A D 2d 508, 509, supra.) *56 Certainly, it was reasonable for Officer Trembly, on the basis of the information supplied to him by the Schenectady police, to visit and search defendant’s apartment in order to ascertain if defendant was slipping back into criminal activity in violation of his parole. To hold otherwise would be to destroy the very framework of the parole system.
Finally, in consequence of the inspection, it should be noted that in the home of the defendant, the very presence of the stolen articles raises a serious question of parole violation. It has been held by the Court of Appeals of the State of New York that “unexplained or falsely explained possession” of stolen articles justifies the inference that the possessor is a criminal. (People v. Moro, 23 N Y 2d 496.)
The explanation or explanations of the defendant herein were incredible and not factually supported. It follows that since the inspection of defendant’s apartment was lawful, the findings or “ fruits ” .of the inspection were likewise lawful.
Under all the circumstances outlined herein, it appears that the parole officer had reasonable grounds to visit the home of the defendant, to ask admittance, to inspect and to make a search. For these reasons, the motion to suppress must be denied. Upon trial of the issues herein, the defendant will be given a further opportunity to rebut the presumption mentioned above in the Moro case.