UNITED STATES of America,
Plaintiff-Appellee,

v.

William HILL, Defendant-Appellant.

No. 17822.

United States Court of Appeals,
Seventh Circuit.

Aug. 12, 1971.

Fairchild, Circuit Judge, dissented and filed opinion.

Raymond J. Smith, Chicago, Ill., for defendant-appellant.

William J. Bauer, U. S. Atty., Michael D. Marrs, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before SWYGERT, Chief Judge, FAIRCHILD and PELL, Circuit Judges.

PELL, Circuit Judge.

The defendant-appellant William Hill entered a plea of guilty to several counts of an indictment charging him and others with violations, and conspiracy to violate, the statutes pertaining to interstate transportation of stolen motor vehicles. 18 U.S.C. §§ 2312 and 2313.

On March 11, 1969, Hill was sentenced to four years imprisonment but the sentence was suspended and he was placed on probation for the period thereof. Within approximately two months thereafter Hill was back in court (May 12, 1969) participating, although not testifying, in a hearing to show cause why his probation should not be revoked. He appeals from the revocation which followed the hearing.

The principal error urged for reversal is that the revocation was based on illegal seizure of evidence.

On April 10, 1969, at approximately 10:00 p.m., one month after the sentencing, two city police officers proceeding by vehicle northwardly on Sawyer Avenue toward Cermak Road in Chicago observed Hill by the door of a building about 150 feet north of Cermak. Sawyer at the point in question was dead-end with businesses only, none of which were open.

The police officers' suspicions were aroused by Hill's action of looking toward them after which he walked to-

ward an automobile parked facing the wrong way and across the street from where he had been.

The officers parked their car in front of the wrong-way car and announced themselves as police officers. Upon being asked for identification, Hill produced a summons which showed his address as Elmhurst. Upon inquiry as to what he was doing in the area, he replied he was waiting for a friend, whereupon he was placed under arrest.

One of the officers observed a set of keys on the ground next to the driver's side of the automobile. Hill stated they were not his keys. One of the officers suggested attention being given to the building door and the police vehicle with Hill therein was moved in that direction. While enroute Hill said, "I wasn't by the door. You're not going to frame me." Thereupon he was handcuffed.

One of the officers tried the door and found it locked. Inserting several keys in the lock, one was found which turned the lock but the door did not open. The policeman kicked the door which "flew open." From their vantage point, the officers observed in a huge garage, tires, batteries, upholstery and several automobiles in a stripped condition.

Although the various automobiles seemed to have been generally reduced to component parts, other police were able through secret marks to identify the parts as having earlier been a part of the whole of stolen vehicles.

Evidence was also adduced at the hearing that Hill under a pseudonym had been renting the garage for approximately half a year prior to his guilty plea and was the current tenant at the time of the nocturnal door opening.

Hill at the revocation hearing timely filed a motion to suppress the evidence of the stolen goods relying then, and now in this appeal, on a claimed invasion of his Fourth Amendment rights against unreasonable searches and seizures.

Hill contends that a probationer is entitled to constitutional protection from such searches and seizures, citing, *inter* *alia,* Brown v. Kearney, 355 F.2d 199 (5th Cir. 1966), and Martin v. United States, 183 F.2d 436 (4th Cir. 1950). Agreeing with this broad statement, we do not conceive that the probationer ipso facto has forfeited all protection of the constitution.

The Government, however, contends that even the constitutional issue is narrowed to whether a probation revocation hearing calls into play the exclusionary rule of the Fourth Amendment. Asserting that it does not, the Government's position is that the motion to suppress was properly overruled.

The Government in an erudite and commendably objective brief argues with some persuasive force, in tracing the development of this exclusionary rule, and such rules in general, that the exclusion of evidence is premised on the need for deterrence of police misconduct, that the need for deterrence is derived from experience and that, at least, on the factual situation here involved, experience has dictated no necessity for deterrence.

We also note the language of the Supreme Court in Harris v. New York, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L. Ed.2d 1 (1971):

> "Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief."

Although Hill did not advance the argument, the Government brief also analyzes the necessity, and urges none, of applying the exclusionary rule because of the "imperative of judicial integrity." Elkins v. United States, 364 U.S. 206, 222, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). Arguing that this phrase, beginning as a literary expression, is not conceived by the Supreme Court as a shibboleth to be inflexibly applied as though it contained its own meaning, the Government cites Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

The Government thus urges that considerations of policy dictate the exclusionary rule not be extended to probation or parole revocation proceedings. This position is supported by the relatively few cases concerned with the point, *e. g.,* United States ex rel. Sperling v. Fitzpatrick, 426 F.2d 1161 (2d Cir. 1970); United States ex rel. Lombardino v. Heyd, 318 F.Supp. 648 (E.D.La.1970). We agree.

■ While we do not hold that a probationer has forfeited all constitutional protection, we are here involved only with the policy necessitation for extension of the exclusionary rule to the probationer. Although our decision rests on Hill's probationary status, the facts involved present a minimal basis for invoking a policy argument.

The defendant asserts that his arrest was without probable cause, however, the Government does not gainsay this. Nor is it denied that the keys were discovered subsequent to the arrest. This, however, here was not a matter of causality but of chronology.

Hill, acting in what could properly be interpreted to be a furtive manner in the context of a deserted industrial dead-end street, while not necessarily producing probable cause by present day standards, nevertheless was at least in the category of suspicion-arousing. There was ample evidence here that the discovery of the keys, under these circumstances and irrespective of the arrest, was inevitable. They were in plain sight but had not been seen to have been dropped by Hill who in fact denied not only that the keys were his but also that he had been by the door from which the officers had just seen him coming.

The officer who was confronted with this combination of facts may, and probably justifiably did, conceive it to be his duty to check the door. It was found to contain no marks of a forced entry. One of the keys found in the street fitted the lock and on the door being pushed open stolen articles were revealed.

There was no indication whatsoever from which the officers could have inferred that the door led to premises in which Hill had a leasehold interest. They were checking property which as far as they had reason to know was alien to Hill, a probationer, who offered no explanation to the police as to what he was doing in the area.

While stronger cases of inevitable discovery may be conceived, there were sufficient facts before the district judge that he opined it was unnecessary to reach a conclusion as to whether Hill's rights were violated in any way.

■ Hill further contends that even if the revocation of probation be affirmed, the district court erroneously increased the original suspended four year term to ten years. The district judge apparently also believed this for on March 3, 1970 by a *nunc pro tunc* entry the sentence was reduced to four years. At this time, however, the case was here on appeal.

The Government's position is that a court "may correct an illegal sentence at any time. * * *" Rule 35, Fed.R. Crim.P. We disagree. 8A Moore, Federal Practice ¶35.02 [1] p. 35–3 (1970). Therefore we remand this case to the district court for appropriate resentencing. In all other respects the decision of the district court is affirmed.

FAIRCHILD, Circuit Judge (dissenting).

Cases like the present one,[1] where a search invades the privacy of one who is a probationer or parolee, but is not known to the officers to be one, raise questions: (1) Whether the exclusionary rule applies in revocation proceedings if the search was unreasonable, (2) Whether the reasonableness of the search is to be tested by the usual standards,

1. See also United States ex rel. Sperling v. Fitzpatrick (2d Cir., 1970), 426 F.2d 1161; United States ex rel. Lombardino v. Heyd (E.D.La., 1970), 318 F.Supp. 648; and In re Martinez (1970), 1 Cal. 3d 641, 83 Cal.Rptr. 382, 463 P.2d 734.

and (3) Was the search reasonable under appropriate standards.

I am of the opinion (1) That the exclusionary rule applies, (2) That the reasonableness of the search is to be tested by the usual standards even though such standards would be less strict as between probation officer and probationer, and (3) That this search was not reasonable.

I would prefer not to rationalize the exclusionary rule solely in terms of its expediency as a deterrent of police officers from unlawful searches. The philosophy that courts must not sanction violations of constitutional rights is as evident in the opinion which promulgated the exclusionary rule as is the more pragmatic proposition that the rule will deter the police from such activities.[2] This "imperative of judicial integrity," as it is termed in Elkins v. United States (1960), 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669, though not as clearly and consistently enunciated in support of the exclusionary rule as the theory of its expediency as a deterrent, continues to be recognized as one of its foundations. "[A] ruling admitting evidence in a criminal trial * * * has the necessary effect of legitimizing the conduct which produced the evidence."[3]

Even limiting one's view to the importance of the exclusionary rule as a deterrent, the fact that an independent prosecution and revocation under an old conviction are often interchangeable for a probationer[4] suggests that abrogation of the exclusionary rule for probation revocation would seriously undermine the rule's effect as a deterrent.

It may well be that where a search is for the purpose of implementing the probation status, a broader range of search is to be accepted as reasonable. It was said in United States ex rel. Randazzo v. Follette,[5]

"Any search by a parole officer in good faith to determine whether a paroled prisoner is complying with the conditions of his release would in my opinion be reasonable. Such a search would become 'unreasonable' only if made too often or if made at an unreasonable hour or if unreasonably prolonged or for other reasons establishing arbitrary or oppressive conduct by the parole officer."

But it is more consistent with any fundamental principle of the exclusionary rule that it be applied on the basis of what the officers knew and thought they were doing than on the basis of a fact which would have relaxed the standard, but which was unknown to them.

There are several present exceptions to the exclusionary rule, i. e., use of evidence where the unlawful seizure violated the rights of someone other than defendant,[6] use to impeach a defendant's testimony,[7] use by the court in determining

---

2. Weeks v. United States (1914), 232 U.S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652, 655: "The tendency of those who execute the criminal laws of the country to obtain convictions by means of unlawful seizures * * * should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights."

3. Terry v. Ohio (1968), 392 U.S. 1, 13, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889.

4. See Mr. Justice Peters' dissent in In re Martinez (1970), 1 Cal.3d 641, 83 Cal. Rptr. 382, 463 P.2d 734, 741, 742, and R. Dawson, Sentencing, The Decision as to Type, Length, and Conditions of Sentence 153 (1969). "In practice, probation revocation is frequently used as an alternative to prosecution for serious offenses. If the probationer is clearly convictable of the new offense, there is little need both to prosecute him for it and revoke his probation. Often the choice between prosecution and revocation is a fortuitous one."

5. (S.D.N.Y., 1968), 282 F.Supp. 10, 13.

6. Alderman v. United States (1968), 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176.

7. Walder v. United States (1954), 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503, and Harris v. New York (February 24, 1971), 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1.

sentence,[8] and use before a grand jury.[9] The broader the cumulative exceptions, the greater the probability that the fruits of an unlawful search will turn out to be useful, and the weaker the deterrence from unlawful searching engendered by the rule. The very breadth of exceptions to the exclusionary rule render it less effective than it otherwise would be, and counsels against recognition of further exceptions as long as we rely on it at all.

I do not understand that the majority holds the entry of the garage and seizure of evidence reasonable under the ordinary standards. I do not believe they were. The police observation of Hill's conduct was a dubious basis even for his arrest. His conduct, together with finding the keys, did not make it reasonable for the police to unlock the garage door and look inside. Even if that were reasonable, the fact that the automobile parts were in "plain view" once the door was opened, did not validate the seizure. "Plain view alone is never enough to justify the warrantless seizure of evidence." [10]

I would reverse.

Myron L. Gordon, District Judge, dissented and filed opinion.

8. United States v. Schipani (2d Cir., 1970), 435 F.2d 26.

9. United States v. Blue (1966), 384 U.S. 251, 255 n. 3, 86 S.Ct. 1416, 16 L.Ed.2d 510.

10. Coolidge v. New Hampshire (June 21, 1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.