ALLAN CONRAD SEIM, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 9927

ALLAN CONRAD SEIM, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 10146

February 7, 1979                    590 P.2d 1152

---

[Rehearing denied April 18, 1979]

*Newell B. Knight,* Sparks, and *Edwin S. Saul,* Van Nuys, California, for Appellant.

*Richard Bryan,* Attorney General, Carson City, *Calvin R. X. Dunlap,* District Attorney, and *John L. Conner,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

These are consolidated appeals from a conviction of possession of stolen property, a felony, NRS 205.275, and from a revocation of probation predicated on a prior felony conviction.

Appellant's prior conviction was entered on a plea of guilty to the felony charge of attempted possession of a stolen vehicle, to-wit: a 1974 Porsche. Judgment was entered May 14, 1976, and appellant was sentenced to a term of three years, suspended, and placed on probation. As a special condition of probation, the court ordered that "[Seim] will submit his person, vehicle and residence to a search and seizure without a warrant by any parole, probation or peace officer to determine the presence of stolen property."

Subsequently, on October 19, 1976, an informant contacted appellant's probation officer with information that there were two new 1975 Porsches stored in a Reno warehouse leased by appellant. Dennis Balaam, a detective with the Washoe County Sheriff's Office, was contacted. Balaam went to the Mini-Maxi Storage yard where he spoke with Sam Rosenberger, the manager. Rosenberger informed Balaam that the unit in question,

No. 12, was rented to one Rodney Flournoy, whose rental payments were in arrears. In fact, it was appellant, posing as Flournoy, who had leased the storage unit. The real Flournoy was a customer of appellant's antique automobile restoration business and had never authorized appellant to use his name for any purpose.

Suspecting a probation violation, Balaam returned to Mini-Maxi Storage that afternoon, accompanied by a Washoe County probation officer. Mr. Rosenberger removed the lock from the storage unit and allowed the officers to enter. Inside they observed the two automobiles, the subject of Seim's subsequent conviction.

A warrant issued, and appellant was arrested by the local police in Nevada City, California. Also present at the time of the arrest were Balaam and appellant's probation officer. Appellant was advised of his rights, and during a search incidental to the arrest, a key to the padlock on the storage unit was found and taken from his person.

Appellant made several pretrial motions and renewed them at trial: to suppress the key to the storage unit, together with the contents discovered therein; to restrain respondent from impeaching appellant by the use of a prior felony conviction; to exclude evidence of his prior conduct (embodied in the conviction), and to dismiss the indictment or, alternatively, to convene a postindictment preliminary hearing. Following hearings on the motions, the state agreed to refrain from the use of appellant's prior criminal conduct in its case in chief; the other motions were denied.

At trial, appellant denied having any knowledge concerning the stolen vehicles or where they were found. While he admitted that he had used Flournoy's name to rent the storage unit, he claimed that he took most of his property, including the contents of the unit, with him when he moved to Nevada City in June, 1976. He testifed that several of his former employees had access to the warehouse.

The jury returned a verdict of guilty. Appellant was sentenced to a consecutive three-year term, and probation relating to his prior conviction was subsequently revoked. From this conviction and revocation of probation Seim perfected these appeals.

We recognize three issues as meriting discussion. They are: (1) Whether the trial court erred in denying appellant's motion to suppress the evidence discovered as a result of the warrantless search of the storage unit? (2) Whether the admission of evidence of appellant's prior criminal conduct was reversible error? (3) Whether the Nevada grand jury system violates the

right of an accused to due process and equal protection? We answer each question in the negative.

1. *The warrantless search.* Appellant contends the trial court erred in denying his motion to suppress the evidence discovered as a result of the search of the storage unit. Essentially, he maintains that there was no probable cause to justify the warrantless search and, absent consent, his Fourth Amendment rights were violated. The state argues that the requirement of a warrant was dispensed with in view of the special condition of appellant's probation. Himmage v. State, 88 Nev. 296, 496 P.2d 763 (1972); see Annot., 32 ALRFed. 155 (1977).

Before reaching the issue of whether appellant's Fourth Amendment rights have been violated, it is important to remember the function of probation in our correctional process.

Probation is an integral part of the penal system, calculated to provide a period of grace in order to assist in the rehabilitation of an eligible offender; "to take advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable. [Citations omitted.]" Burns v. United States, 287 U.S. 216, 220 (1932). It is clear then that the broad objective of probation is rehabilitation with incidental public safety, and that the conditions of probation should further provide this objective. See People v. Mason, 488 P.2d 630 (Cal. 1971), cert. denied, 405 U.S. 1016; Logan v. People, 332 P.2d 897 (Colo. 1958). Nevada's legislation relating to probation confers an authority commensurate with its objectives[1] and empowers our parole and probation officers, *inter alia,* to "keep informed concerning the conduct and condition of all persons under their supervision and use all suitable methods to aid and encourage them . . . to bring about improvement in their conduct and conditions." NRS 213.1096.

In Nevada, as elsewhere, probation officers have long enjoyed extensive powers to search probationers under their

[1] NRS 176.185(3) provides:

In issuing the order granting probation, the court may fix the terms and conditions thereof, including a requirement for restitution as provided in NRS 176.189, except that the court shall not suspend the execution of a sentence of imprisonment after the defendant has begun to serve it.

NRS 176.205 further provides:

By order duly entered, the court may impose, and may at any time modify, any conditions of probation or suspension of sentence. The court shall cause a copy of any such order to be delivered to the parole and probation officer and the probationer.

supervision. See Himmage v. State, *supra*. People v. Hernandez, 40 Cal. Rptr. 100 (Cal.App. 1964), sets forth the traditional view of a *parolee's* Fourth Amendment rights, and we perceive no material distinctions between parolees and probationers. Neither probationers nor parolees can assert, save in a limited number of circumstances (see, for example, United States v. Follette, 282 F.Supp. 10 (S.D.N.Y. 1968), aff'd, United States ex rel. Randazzo v. Follette, 418 F.2d 1319 (2d Cir. 1969), cert. denied, 402 U.S. 984, search by parole officer held invalid where made for the purpose of harassing or oppressing the parolee; United States v. Hallman, 365 F.2d 289 (3rd Cir. 1966), police, as distinguished from parole officers, could not initiate search of parolee where they could not search ordinary citizen; Annot., 32 ALR Fed., *supra*, at 165), Fourth Amendment guarantees against correctional authorities who supervise them. Compare Latta v. Fitzharris, 521 F.2d 246 (9th Cir. 1975), cert. denied, 423 U.S. 897.

Appellant does not challenge the validity of the condition of his probation. Cf. United States v. Consuelo-Gonzalez, 521 F.2d 259 (9th Cir. 1975); State v. Page, 564 P.2d 82 (Ariz.App. 1976). Indeed, he recognizes that a probationer has no reasonable expectation of traditional Fourth Amendment protection. Himmage v. State, *supra;* People v. Mason, *supra;* Annot., 32 ALR Fed., *supra,* at 159. Instead, he challenges the reasonableness of the search as being conducted outside the presence of the defendant or his probation officer, without probable cause, and beyond the scope of the probation order. We disagree.

To justify a warrantless search by a parole or probation officer, the officer must have reasonable grounds to believe that a violation of the parole or probation has occurred. People v. Anderson, 536 P.2d 302 (Colo. 1975); Annot., 32 ALR Fed., *supra,* at 160. Thus, it has been said that even a "hunch," if reasonable and held in good faith, would justify a search of a parolee's home. Latta v. Fitzharris, *supra;* cf. United States v. Smith, 395 F.Supp. 1155 (W.D.N.Y. 1975).

Here, information that two stolen Porsches were being stored in a warehouse rented to appellant under a fictitious name was communicated to appellant's probation officer. This, coupled with the fact that his prior conviction was based upon a theft of the same model car, surely supplied reasonable cause to believe that a search was necessary to detect a possible probation violation. It has been held that such information is *per*

*se* sufficient, dehors a probation context, to sustain a finding that a search and seizure were made with probable cause. See People v. Prewitt, 341 P.2d 1 (Cal. 1959).

The fact that neither appellant nor his probation officer was present at the time of the search of the storage unit is not decisive.[2] We note that a probation officer, familiar with appellant, was present.

The condition of appellant's probation read that he *shall submit to a search* of his person, vehicle or residence *without a warrant, by any parole, probation or peace officer* to detect the presence of stolen property. In Latta v. Fitzharris, *supra,* at 250, the court stated, "the parole officer ought to know more about the parolee than anyone else but his family. He is therefore in a better position than anyone else to decide whether a search is necessary." Here, the search condition contemplated the prospective involvement of any peace officer, there was probable cause to search, and appellant's probation officer had been consulted respecting appellant's alleged violative conduct prior to the search. Although the search could have been conducted by any peace officer, a probation officer did participate and it is clear that the police did not initiate, but rather joined to expedite the search. See United States v. Hallman, *supra.* There often exists a fine line between purely probationary or correctional purposes and police investigatory objectives; here, however, the predominant purpose for the search was to determine whether the conditions of appellant's probation had been violated. Cf. People v. Coffman, 82 Cal. Rptr. 782 (Cal.App. 1969); United States v. Hallman, *supra.*

Finally, appellant contends that the search of the storage unit was beyond the scope of the condition of the probation authorizing searches of his person, automobile or residence. We will not invalidate the search on such a literal reading of the probation agreement since to do so would be in derogation of the primary purposes of such provisions, namely, to deter further criminal conduct by the probationer and to determine whether he is complying with the terms of his probation. See NRS 213.1096(4).

Equally non-meritorious is the notion that appellant had a reasonable expectation of privacy with respect to the storage

[2]In United States ex rel. Santos v. New York State Bd. of Par., 441 F.2d 1216 (2nd Cir. 1971), cert. denied, 404 U.S. 1025, the parolee's absence was not considered a significant factor in determining the validity of a search of his apartment. Moreover, participation by law enforcement officials other than the probationer's regularly assigned agent has been held not to affect the validity of the search, at least where the moving force for the search and seizure came from the parole or probation department. See also Annot., 32 ALR Fed., *supra,* at 161 and 177.

unit. "[W]hen [a] defendant in order to obtain probation specifically agreed to permit at any time a warrantless search of his person, car and house, he [has] voluntarily waived whatever claim of privacy he might otherwise have had." People v. Mason, *supra,* at 634; in accord Himmage v. State, *supra.* Moreover, we do not believe that a police intrusion into a storage unit is as offensive as a warrantless search of a car or residence. Yet, such searches of appellant's home or car were expressly authorized. The trial courts cannot be expected to enumerate every item of property that can be searched or seized. Here, the special condition of probation was clearly related to appellant's prior criminal conduct and is directed at deterring or discovering subsequent criminal conduct. Accordingly, we hold that the warrantless search of appellant's property was justified on the facts of this case, and that the authorities did not exceed the scope of a reasonable search and seizure.[3]

"Although the purposes of the [probation] system give the [probation] authorities a special and unique interest in invading the privacy of [probationers] under their supervision," Latta v. Fitzharris, *supra,* at 249, we do not hold that every search of persons or property made incident to a probation search condition would be reasonable. See People v. Mason, *supra;* Randazzo v. Follette, *supra.* Indeed, it seems compatible with our correctional system, consistent with the court's narrow view of any "advance waiver" of constitutional rights, People v. Bremmer, 106 Cal. Rptr. 797 (Cal.App. 1973); cf. Zap v. United States, 328 U.S. 624 (1946), and desirable from a penological point of view to obtain a probation violation warrant, where not impracticable, before conducting a search notwithstanding the existence of a probation agreement waiver. Cf. United States v. Smith, *supra;* compare Niro v. United States, 388 F.2d 535 (1st Cir. 1968).

2. *Appellant's prior conduct.* Appellant next contends that the trial court committed reversible error in allowing the state to introduce during its rebuttal, evidence that defendant had previously committed a criminal act. This contention is based upon the perceived danger that the jury might have convicted him on the basis of his prior wrongful conduct rather than for the crime charged in the indictment, despite the limiting instructions as to the permissible use of the evidence.

---

[3]Although the state has argued that the consent of the landlord obviated the need for a warrant, constituted a private search, and that appellant's abandonment of the unit dispenses with the requirement of a warrant, it is unnecessary to reach these questions in view of our holding that the probation condition authorized the warrantless search.

The state had stipulated that it would not use the prior conduct in its case in chief. The prior conduct, resulting in conviction, concerned appellant's use and possession of a stolen Porsche and his conduct of changing the serial numbers of the stolen car to conform to title documents appellant had previously acquired. The trial court admitted the evidence to prove motive and common scheme or plan. NRS 48.045(2).[4] See also Wallin v. State, 93 Nev. 10, 558 P.2d 1143 (1977), and Nester v. State, 75 Nev. 41, 334 P.2d 524 (1959), approving admission for those purposes. The admission of the evidence after the district judge balanced its probative value against its potential for undue prejudice, a judgment committed to his sound discretion, will not be disturbed in the absence of an abuse. NRS 48.035(1); Bishop v. State, 92 Nev. 510, 554 P.2d 266 (1976); Baker v. State, 88 Nev. 369, 498 P.2d 1310 (1972); Nester v. State, *supra.* Here, the prior conduct, considering its similarity to the instant offense and its proximateness in time, was relevant. State v. McDaniel, 298 P.2d 798 (Ariz. 1956); compare Findley v. State, 94 Nev. 212, 577 P.2d 867 (1978). The trial judge was fully apprised of the possible prejudicial effect but nevertheless concluded that the probative value of the evidence outweighed any prejudice. We find no abuse of discretion and will not reverse that judgment.

3.  *The grand jury challenge.*  Appellant next contends that the fact that the prosecution was initiated by indictment rather than by information violates his right to due process and equal protection under the United States Constitution. He claims he has been denied the many fundamental rights attendant to an adversary preliminary hearing proceeding. In support of this contention, he cites People v. Duncan, 201 N.W.2d 629, 635 (Mich. 1972), which held that, "[i]n all future cases wherein a defendant is accused of a felony, the right to a preliminary examination shall exist." Appellant urges this court to follow that precedent. However, *Duncan* was not decided on constitutional grounds, but rather on the basis of the court's inherent power in the area of criminal procedure. We decline to follow the *Duncan* precedent.

The California Supreme Court recently decided Hawkins v. Superior Court, 586 P.2d 916, 922 (Cal. 1978), and concluded

---

[4]NRS 48.045(2) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. *It may, however, be admissible to prove other purposes, such as* proof of *motive,* opportunity, intent, preparation, *plan, knowledge, identity,* or absence of mistake or accident. [Emphasis added.]

that "the denial of a postindictment preliminary hearing deprived [the accused] of equal protection of the laws guaranteed by article I, section 7 of the California Constitution. [Footnote omitted.]" While recognizing that there is a "disparity in the procedural rights afforded defendants charged by the prosecutor by means of an information and defendants charged by the grand jury in an indictment," *Id.*, at 917, we believe the existence of statutory and other procedural safeguards, coupled with the availability of extraordinary relief in our district courts and State Supreme Court are adequate to protect an accused from discriminatory treatment and unfounded accusations. See Cairns v. Sheriff, 89 Nev. 113, 508 P.2d 1015 (1973), where we rejected a similar due process and equal protection challenge to our grand jury system.

In Nevada, prosecutions may be initiated either by indictment or information. Nevada Const., Art. 1, § 8; NRS 173.015; Hyler v. Sheriff, 93 Nev. 561, 571 P.2d 114 (1977). The power and jurisdiction of the district court in cases initiated by indictment is the same respecting prosecutions commenced by information. NRS 173.025. The grand jury can consider only legal evidence, NRS 172.135(2), and although not bound to hear the evidence of an accused, it may order the production of explanatory evidence, including the issuance of process for witnesses. NRS 172.145; Hyler v. Sheriff, *supra.* Until an indictment is issued, a shroud of secrecy keeps the proceedings confidential, with logical statutory exceptions (NRS 172.235, 172,245), thereby protecting an accused from unfounded accusations. Cairns v. Sheriff, *supra.* The grand jury is permitted to return an indictment only when the evidence establishes probable cause to believe that an offense has been committed and that the defendant has committed it. NRS 172.155. The defendant can object to the sufficiency of the evidence by application for writ of habeas corpus. NRS 34.500(7). Shelby v. District Court, 82 Nev. 204, 414 P.2d 942 (1966). An indictment cannot be found absent concurrence of twelve of the seventeen jurors. NRS 172.065. A complete copy of the transcript of the testimony of the witnesses before the grand jury must be promptly made available to the defendant. NRS 172.225; Shelby v. District Court, *supra.* Evidentiary hearings, including motions to suppress evidence are available to one accused by indictment. NRS 174.125. See United States v. Hocker, 268 F.Supp. 864 (D.C. Nev. 1967), aff'd, Morford v. Hocker, 394 F.2d 169 (9th Cir. 1968), cert. denied, 392 U.S. 944, for an excellent analysis of Nevada's two methods of instituting a criminal prosecution.

Although the United States Supreme Court in Coleman v. Alabama, 399 U.S. 1 (1970), determined that an accused is entitled to counsel at a preliminary hearing, that being a "critical stage" because of the information potentially discoverable, the high Court has never held that a preliminary examination is either expressly or impliedly required by any provision of the federal Constitution, and we are not disposed to interpret our state constitution to mandate that result.

Accordingly, we affirm the conviction and probation revocation.

MOWBRAY, C. J., and THOMPSON and BATJER, JJ., concur.

GUNDERSON, J., concurring:
I concur in the result.