## A89A2326. GREEN v. THE STATE.
(390 SE2d 285)

BANKE, Presiding Judge.

On May 31, 1989, while on patrol in an area of Albany regarded by them as a "heavy drug activity area," two plain-clothes police officers observed the appellant engaged in conduct which they associated with drug dealing. Upon seeing the officers, the appellant turned to walk away from them, making an apparent dropping gesture with his hand as he did so. The officers thereupon confronted him and during routine questioning learned that he was on probation. They then caused him to be transported to the police station, where, pursuant to the terms and conditions of his probation, he was directed to produce a urine specimen for chemical analysis. Based on the results of the tests performed on the specimen, which revealed the presence of cocaine metabolites in the appellant's system, the state both filed a petition to revoke his probation and procured an indictment charging him with possession of cocaine. The present appeal is from the appellant's conviction and sentence on the cocaine possession charge.

The appellant has disclosed in his brief filed in support of this appeal that he "stipulated" during the probation revocation proceedings "to the violation of May 31, 1989," following which he was "sentenced" to serve 90 days in jail for violating his probation. However, it does not appear that any such stipulation was made or brought to the attention of the jury during the trial of the present case. Consequently, the appellant's conviction on the cocaine possession charge rests solely on the urinalysis results revealing the presence of cocaine metabolites in his system. *Held*:

1. " 'The presence of cocaine in a defendant's bodily fluids is considered to be direct positive evidence of possession of cocaine (Cit.)' [Cits.] Accordingly, there was sufficient evidence produced at trial to authorize any rational trior of fact to find appellant guilty beyond a reasonable doubt of possession of cocaine. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Stevens v. State*, 165 Ga. App. 814, 815 (1) (302 SE2d 724) (1983)." *Buffington v. State*, 190 Ga. App. 365 (1) (378 SE2d 884) (1989).

2. The appellant contends that his Fourth Amendment rights were violated by the invocation of the mandatory conditions of his probation to obtain a urine sample for use as evidence against him in an independent criminal prosecution. We disagree.

The appellant was prohibited under the terms of his probation from utilizing any controlled substance except pursuant to a physi-

cian's prescription; and he was required to produce "from time to time upon oral or written request by any probation supervisor, or by any city, county or state law enforcement officer, . . . a breath, spittle, urine, and/or blood specimen for analysis for the possible presence of" such substances. In *Smith v. State*, 250 Ga. 438, 439 (298 SE2d 482) (1983), the Georgia Supreme Court held that "[t]he requirement that a probationer, upon request, produce body fluid for analysis is reasonable as an aid in determining compliance with the prohibition upon the use of controlled substances." Cf. *Griffin v. Wisconsin*, 483 U. S. 868 (107 SC 3164, 97 LE2d 709) (1987), and *Luke v. State*, 178 Ga. App. 614 (2) (344 SE2d 452) (1986) (upholding the validity of an analogous requirement authorizing warrantless searches of the probationers' homes). While conceding that a probationer may lawfully be required to produce bodily fluid specimens for chemical analysis upon the request of a probation officer engaged in the routine performance of his duties, the appellant contends that where, as in the present case, other law enforcement officials are permitted to make such requests, the potential for police harassment becomes so great as to invalidate the condition. However, the Georgia Supreme Court rejected such an argument in *Smith*, supra, holding that where "the request for urinalysis . . . arose out of [the defendant's] probationary status, and was made by a local law enforcement officer, in the county where he had been convicted, with the express intention of monitoring his compliance with the terms of his probation," no ground for reversal existed. Id. 250 Ga. at 440.

Although the request for urinalysis at issue in the present case was not made as a routine incident of the probation supervision process, as was the case in *Smith*, supra, it is apparent without dispute from the record that it was prompted by a good-faith suspicion, arising from routine police investigative work, that the appellant was dealing in drugs, rather than by a desire to harass him. We are unwilling to hold that the request was violative of the appellant's Fourth Amendment rights under these circumstances merely because the test results were subsequently used as evidence against him in an independent criminal prosecution as well as for probation revocation purposes. Accordingly, we hold that the appellant's motion to suppress the test results was properly denied.

3. The appellant contends that his production of the urine specimen was also violative of his Fifth Amendment right against self-incrimination because the request for it was not preceded by the *Miranda* warnings and because refusal to comply would itself have been punishable as a violation of his probation. However, it is well settled that the production of bodily fluid samples is not communicative or testimonial in nature and thus does not implicate a defendant's privilege against self-incrimination. See *Schmerber v. California*, 384 U. S.

757 (86 SC 1826, 16 LE2d 908) (1966) (holding that a DUI suspect's privilege against self-incrimination was not violated by the extraction of a blood sample without his consent); *South Dakota v. Neville*, 459 U. S. 553 (103 SC 916, 74 LE2d 748) (1983) (holding that a DUI defendant's due process rights were not violated by the introduction of evidence that he had refused to take a blood-alcohol test, although police had failed to warn him that such a refusal could be used against him in this manner). Cf. *United States v. Euge*, 444 U. S. 707 (100 SC 874, 63 LE2d 141) (1980) (rejecting a Fifth Amendment challenge to the compulsion of a handwriting exemplar); *United States v. Dionisio*, 410 U. S. 1 (93 SC 764, 35 LE2d 67) (1973) (rejecting a Fifth Amendment challenge to the compulsion of a voice exemplar). Based on these authorities, we hold that the production of the urine specimen at issue in this case did not result in any violation of the appellant's Fifth Amendment rights.

4. The appellant contends that the trial court erred in "disregarding" his request for funds to obtain an expert "qualified to testify as to the fallible operation of the machines utilized to examine the urine specimen provided by [him] and to conduct an independent evaluation of the substance." However, though the appellant filed an application seeking to obtain such funds, the record does not reflect that he made any attempt to elicit a ruling on the application. Accordingly, this enumeration of error presents nothing for review. See *Thompson v. State*, 168 Ga. App. 734, 736 (3) (310 SE2d 725) (1983).

5. The appellant contends that the trial court erred in overruling his motion to quash the indictment. This motion was based on allegations that the urine specimen had "presumably been destroyed without prior notice to [him]," that he had thereby been denied "an opportunity to verify the weight of the contraband purportedly possessed," and that he had similarly been denied "an opportunity to conduct an independent analysis of the substance alleged to be cocaine." The appellant did not seek a ruling on the motion until immediately prior to the commencement of the trial, at which time the trial court denied it as untimely because it had not been filed prior to the arraignment. Pretermitting whether the motion was timely, we hold that it was substantively defective in that it failed to assert any defect appearing on the face of the indictment. See generally *Millhollan v. State*, 221 Ga. 165 (1) (143 SE2d 730) (1965); *Felker v. State*, 172 Ga. App. 492, 494 (2) (323 SE2d 817) (1984). In addition, we note that the appellant made no showing that he had ever sought access to the urine specimen to conduct an independent analysis, compare *Patterson v. State*, 238 Ga. 204 (232 SE2d 233) (1977), or that the specimen had in fact been destroyed without notice to him.

6. The appellant contends that the trial court erred in refusing to grant a mistrial on the basis of the state's failure to comply fully with

his pre-trial request, filed pursuant to OCGA § 17-7-211, for copies of all reports concerning scientific tests relied upon by the state. Although the appellant had been provided with a copy of the report prepared by the State Crime Lab regarding its analysis of the urine specimen, he had not received a copy of an additional report which had evidently been prepared with respect to a preliminary test performed on the specimen at the police station. The motion for mistrial was made in response to testimony concerning those test results. There was, however, no prior objection to the testimony in question, nor was any motion made to strike it. The remedy for a violation of OCGA § 17-7-211 is the exclusion of the evidence rather than the grant of a mistrial. *Pontoon v. State*, 177 Ga. App. 868, 870 (341 SE2d 505) (1986). Thus, in the absence of any objection to or motion to strike the testimony, the refusal to grant a mistrial was proper. In any event, the admission of this testimony was clearly harmless, since it was merely cumulative of the testimony offered by the State Crime Laboratory chemist who had analyzed the specimen and since there had been no suggestion, much less any showing, that the report in question contained any information which would have been favorable to the appellant's case.

7. The appellant contends that the trial court erred in sentencing him in the absence of his attorney. The record reflects that the sentencing hearing was scheduled for 9:00 a.m. on the day following the return of the verdict in the case, that defense counsel was not present in court at that time, that the trial court commenced the hearing without him at 9:07 a.m., and that, after receiving information from the state's attorney that the appellant was "the subject of a federal investigation" which was expected to result in the return of indictments against him for trafficking in cocaine and selling cocaine, the appellant was sentenced to serve five years in confinement, to be followed by 10 years on probation. Defense counsel subsequently arrived on the scene and argued for a reduction in this sentence, but the trial court declined the request, citing the information which had been provided to him by the state's attorney concerning the federal investigation.

The appellant's Sixth Amendment right to counsel was clearly violated by this procedure. "[T]he [United States] Supreme Court has made it abundantly clear that even though a defendant has no substantive right to a particular sentence within the range authorized by statute, the total denial of counsel at a critical stage such as sentencing is presumptively prejudicial and is not to be deemed harmless error. [Cits.]" *Golden v. Newsome*, 755 F2d 1478, 1483 (11th Cir. 1985) (holding that a defendant had not waived his right to counsel at sentencing merely because he had waived his own right to be present by escaping from custody). "Whenever the sentencing proceeding is

more than ministerial . . . the presence of counsel is essential to guide the sentencing court in the exercise of its power and discretion and to protect the rights and interests of the defendant; the absence of counsel is therefore legally presumed to be prejudicial if the sentencing court had the legal authority to impose a more lenient sentence than it actually did." Id. at fn. 9. The appellant's sentence is accordingly vacated, and the case is remanded for resentencing. The conviction is, however, otherwise affirmed.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Sognier and Pope, JJ., concur.*

DECIDED JANUARY 16, 1990 —
REHEARING DENIED JANUARY 29, 1990 —

*John M. Beauchamp & Associates, Kermit S. Dorough, Jr.,* for appellant.

*Britt R. Priddy, District Attorney, Henry O. Jones III, Assistant District Attorney,* for appellee.