STATE of Utah, Plaintiff and Appellee,

v.

Ellis R. BLACKWELL, Defendant
and Appellant.

No. 900262–CA.

Court of Appeals of Utah.

April 5, 1991.

Stephen A. Laker, Bernard Allen (argued), Public Defender's Ass'n, Ogden, for Blackwell.

R. Paul Van Dam, State Atty. Gen., Marian Decker (argued), Asst. Atty. Gen., for State.

Before BILLINGS, GARFF and RUSSON, JJ.

## OPINION

BILLINGS, Judge:

Defendant Ellis R. Blackwell appeals his conviction of possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2) (1990). Initially, defendant was also charged with possession of drug paraphernalia, a class B misdemeanor; theft of a motor vehicle, a class A misdemeanor; and improper registration, a class B misdemeanor. As part of a plea bargain agreement, he entered a plea of no contest, preserving his right to appeal the denial of his motion to suppress evidence. In his motion to suppress, defen-

dant challenged the admission in this prosecution of results of a urinalysis he was required to submit to as a condition of parole. We affirm defendant's conviction.

In June 1989, defendant was paroled by the Utah State Board of Pardons. Defendant signed a parole agreement which included, among other conditions, a requirement that he submit to random urinalysis. On December 7, 1989, defendant's parole officer apprehended defendant in a moving vehicle, after giving chase, at a time when defendant was a fugitive from parole. A search of the car in which defendant was a passenger revealed methamphetamines. Defendant was booked into the Weber County jail as a parole violator. While in jail, defendant submitted to a urinalysis which revealed the presence of methamphetamine in defendant's system.

Defendant was charged with several offenses including possession of a controlled substance. On January 31, 1989, defense counsel filed a motion to suppress evidence seized from the vehicle, statements by the defendant, and the results of the urinalysis. Defendant also filed a pro se motion to suppress and motion to dismiss. Following a suppression hearing, counsel for both parties submitted memoranda of law regarding the use of the urinalysis results to support a prosecution for a new offense. Based on these memoranda, the trial judge denied defendant's motion to suppress.[1]

The court sentenced defendant to an indeterminate term of zero to five years in the Utah State Prison, to be served concurrently with his prior sentence, giving him credit for time served.

## USE OF EVIDENCE SEIZED PURSUANT TO PAROLE AGREEMENT IN PROSECUTION OF SEPARATE CRIME

Defendant contends that his urinalysis results, which were positive for methamphetamine, should not have been admissible in his trial for possession of a controlled substance. Defendant admits he consented to random urinalysis in his parole agreement. However, he claims the use of the results of a urinalysis, required by and consented to because of the terms of his parole agreement, in a prosecution for a subsequent criminal offense, violated his fourth amendment rights against unreasonable search and seizure and his fifth amendment rights against self-incrimination.

### A. Fourth Amendment

Defendant claims that, even though he was on parole, the fourth amendment to the United States Constitution prohibits the warrantless, nonconsensual seizure of his bodily fluids to be used as evidence in a subsequent criminal prosecution.

The Utah Supreme Court squarely addressed fourth amendment rights of parolees in *State v. Velasquez*, 672 P.2d 1254 (Utah 1983). In *Velasquez*, the defendant appealed a second degree murder conviction claiming admission of a gun and ammunition discovered by parole officers during a warrantless search of his apartment was unconstitutional. At the time of the search, Velasquez was an unemployed parolee living with another unemployed parolee without visible means of support, adjacent to the apartment in which a murder occurred. Parole officers for the parolee roommates became concerned after an anonymous tip about defendant's roommate's involvement in drug dealing. After learning defendant was a parolee, the police encouraged a search of defendant's apartment by the parole officers. The parole officers searched defendant's apartment and discovered a pistol, an ammunition clip and some .22 shells, which they later gave to the police. Defendant was charged with second degree murder and his motion to suppress the evidence obtained in the warrantless search of his apartment was denied. He was subsequently convicted.

1. We also note that although defendant's initial motion to suppress encompassed other evidence and issues, on appeal defendant challenges only the court's refusal to suppress the results of his urinalysis.

In *Velasquez*, the Utah Supreme Court held that "parolees do have constitutional rights greater than prisoners," *id.* at 1258, but that parolees have lesser privacy rights than other citizens because they are under the supervisory control of the state. *Id.* The court rationalized these reduced rights recognizing the "necessary power that the state must have over parolees to administer successfully the parole system as a controlled passageway between prison and freedom." *Id.*

In balancing the interests of the government and the parolee, the *Velasquez* court adopted a "middle ground" approach for examining the propriety of searches of parolees. The court rejected the position that no constitutional protection exists, but on the other hand, did not require a warrant based on probable cause to support a search. *Id.* at 1260. The court required a parole officer to have reasonable grounds or reasonable suspicion to investigate whether a parolee has violated his parole or committed a crime before a search or seizure sanctioned by the parole agreement may be conducted. *Id.*[2] The supreme court specifically acknowledged that a parole officer has a right to information a parolee may choose not to divulge, such as "information pertaining to drug use." *Id.* at 1259.

In *Velasquez*, the trial court found the parole agents had a reasonable suspicion that Velasquez and/or his roommate had violated their parole by dealing and/or using drugs. The defendant in *Velasquez* argued, as does defendant here, that any search based on reasonable suspicion must be limited to items relevant to an enforcement and/or revocation of parole. Apparently seeking to avoid confusion, the supreme court rejected this approach, stating that "a parolee can be searched for evidence or contraband which is unrelated to his original offense." *Velasquez*, 672 P.2d at 1261. The court reasoned that "there is no particular connection between the underlying conviction and the objective of parole." *Id.*

Although the *Velasquez* court recognized that regular police officers could not engage in warrantless searches of parolees to the same extent as parole officers, the court also acknowledged that, "[a] parole officer's search of a parolee, however, is not unlawful just because it is also beneficial to the police, or because evidence incriminating the parolee is turned over to the police and used in criminal prosecution." *Id.* at 1262–63 (citing *United States ex rel. Santos v. New York Bd. of Parole*, 441 F.2d 1216 (2d Cir.1971) and *Seim v. State*, 95 Nev. 89, 590 P.2d 1152 (1979)).

In a more recent case, *State v. Johnson*, 748 P.2d 1069 (Utah 1987), the supreme

---

**2.** Consistent with the Utah approach, many other jurisdictions, perhaps a majority, have adopted a reasonable grounds or reasonable suspicion standard for searches of parolees and probationers. *Velasquez*, 672 P.2d at 1258. *See, e.g., State v. Anderson*, 189 Colo. 34, 536 P.2d 302, 305 (1975) (affirming parolee defendant's conviction of felony-theft and adopting the "middle ground" or reasonable grounds approach for warrantless searches incident to parole); *Green v. State*, 194 Ga.App. 343, 390 S.E.2d 285, 287 (defendant probationer's cocaine possession conviction upheld where urinalysis results obtained pursuant to a probation agreement, prompted by good-faith suspicion, were admitted at trial following denial of a motion to suppress), *aff'd*, 260 Ga. 625, 398 S.E.2d 360 (1990). *State v. Fields*, 67 Haw. 268, 686 P.2d 1379, 1390 (1984) (recognizing warrantless searches of probationers are constitutionally permissible where test of reasonableness is met); *State v. Pinson*, 104 Idaho 227, 657 P.2d 1095, 1101 (Ct.App.1983) (adopting "reasonable grounds" approach in affirming revocation of defendant's probation after a warrantless search of defendant revealed illicit drugs); *Seim v. State*, 95 Nev. 89, 590 P.2d 1152, 1155 (1979) (adopting intermediate approach upholding the defendant's conviction of possession of stolen property and revoking his probation); *Pena v. State*, 792 P.2d 1352 (Wyo.1990) (upholding conviction for conspiracy to deliver cocaine and other offenses based on evidence obtained during parole officer's search of parolee's home, adopting reasonable suspicion test as set out in *Velasquez*).

The United States Supreme Court also recognized such a standard in *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). The Court affirmed a Wisconsin Supreme Court decision upholding a subsequent criminal conviction of a probationer on a state law weapons charge where evidence obtained during a warrantless search of probationer's home based on "reasonable grounds" was admitted at trial. *Id.* at 880, 107 S.Ct. at 3172.

court amplified the reasonable suspicion standard enunciated in *Velasquez* stating:

> It is necessary that a parole officer have an articulable "reasonable suspicion," which "requires no more than that the authority acting be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant a belief in the conclusion ... that a condition of parole has been or is being violated." Thus, to constitute a valid warrantless search, there must be evidence (1) that the parole officer has a reasonable suspicion that the parolee has committed a parole violation or crime, and (2) that the search is reasonably related to the parole officer's duty.

*Johnson,* 748 P.2d at 1072 (citations omitted).

■ To facilitate effective appellate review, the judge deciding a motion to suppress evidence should enter appropriate findings of fact and conclusions of law. *See State v. Lovegren,* 798 P.2d 767, 770 (Utah Ct.App.1990) (remand to trial court where no findings of fact made regarding factual issues pertinent to motion to suppress evidence). Where a defendant makes a motion to suppress evidence obtained during a warrantless search pursuant to a parole agreement, the trial judge should enter a ruling regarding the requisite reasonable suspicion of parole violation when deciding such a motion.[3]

■ The trial judge in this case made no ruling on whether the officers had reasonable suspicion to believe defendant had violated his parole. The absence of such a ruling is probably explained by the fact that defendant did not argue in his motion to suppress, nor does he argue on appeal, that the parole agents did not have reasonable suspicion to believe he had violated his parole by using drugs or otherwise. Rather, defendant focused on voluntary consent, an issue we need not reach to affirm the trial court's denial of the motion to suppress.[4] The undisputed facts before the court on the motion to suppress support a ruling that the agents had reasonable suspicion to believe that defendant had violated his parole by using drugs at the time the agents requested he take the urinalysis. Defendant had fled when approached by his parole officer. He was a fugitive from parole and, in a urinalysis performed only a few days earlier, he had

**3.** We have recently discussed the problematic issue of whether a ruling on reasonable suspicion is a finding of fact and thus reviewed under a clearly erroneous standard, or a conclusion of law and thus reviewed under a correction of error standard. *See State v. Carter,* 808 P.2d 736, nn. 3, 6 & 8 (Utah Ct.App.1991). Because the trial judge made no ruling on reasonable suspicion, we are not directly confronted with what our deference to this ruling should be.

**4.** Defendant claims on appeal that, regardless of the consent to search contained in his parole agreement, the results of his urinalysis cannot be used to substantiate a new charge, but only for parole supervision purposes. He argues therefore, that the use of the results of his urinalysis was illegal as he did not voluntarily consent to the urinalysis for purposes of this trial.

We note some inconsistency between the parties' respective statements of fact as to the precise factual context of defendant's agreeing to submit to the urinalysis. However, any disputed fact is irrelevant to our analysis on appeal. We do note that defendant's assertion he was told the results of the urinalysis would not be used against him in a subsequent prosecution is without support in the record. The state indicated it would honor such a promise and moved the court for an evidentiary hearing on the matter. Although such hearing was apparently held after the trial court denied defendant's motion to suppress, defendant failed to provide us with a transcript of that hearing. Because defendant failed to provide such a record to support his assertion that he was told the urinalysis results would not be used against him in an independent criminal prosecution, we would normally "assume the regularity of the proceedings below and affirm the judgment." *State v. Robbins,* 709 P.2d 771, 773 (Utah 1985).

However, we do not find the issue of whether defendant's consent was voluntary relevant to our analysis, as the admission of the urinalysis results is not upheld on grounds of defendant's post-probation voluntary consent, but under a reasonable suspicion analysis. We emphasize that we do not decide today whether the inclusion of a requirement for random urinalysis in a probation agreement constitutes a defendant's voluntary consent to the use of the results of the urinalysis, not in a probation revocation proceeding, but rather in a subsequent criminal prosecution. We leave this provocative issue for a case where it is squarely presented.

tested positive for drugs. When defendant fled, the parole officer pursued and apprehended defendant in a car in which drugs were found. We hold that the uncontroverted facts established reasonable suspicion that defendant had violated his parole by using drugs before he was required to submit to a urinalysis.

## B. *Fifth Amendment*

■ Defendant also argues that taking his bodily fluids pursuant to his coerced consent by threat of revocation of his parole violated his fifth amendment right against self-incrimination. *See State v. Magby*, 113 Ariz. 345, 554 P.2d 1272 (1976) (error to permit defendant's probation officer to testify concerning in-custody statements made to him by defendant in absence of *Miranda* warnings in prosecution for new offense); *State v. Evans*, 77 Wis.2d 225, 252 N.W.2d 664, 668–69 (1977) ("upon timely objection ... the testimony of ... a parole[e] given in response to questions by ... parole agent or at a ... parole revocation hearing, which questions are prompted by pending charges or accusations of particular criminal activity, or any evidence derived from such testimony, is inadmissible against the ... parolee during subsequent proceedings on related criminal charges").

■ We do not find defendant's argument persuasive as the production of bodily fluids is not covered by the fifth amendment. Generally, such fluids are not testimonial in nature and do not implicate defendant's privilege against self-incrimination. *See, e.g., American Fork City v. Crosgrove*, 701 P.2d 1069 (Utah 1985) (following majority of jurisdictions in concluding self-incrimination privilege is limited to "testimonial and communicative evidence only and not to evidence of a real or physical nature" such as a breathalyzer test); *Schmerber v. California*, 384 U.S. 757, 765, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966) (blood sample taken over defendant's objection and used in prosecution for driving under the influence of alcohol not testimonial nor communicative thus not violative of self-incrimination privilege); *Green v. State*, 194 Ga.App. 343, 390 S.E.2d 285, 288 (cocaine positive urinalysis produced pursuant to probation agreement and used in prosecution of defendant for new charge of possession of cocaine not violative of privilege against self-incrimination because such body fluid is not communicative or testimonial in nature), *aff'd*, 260 Ga. 625, 398 S.E.2d 360 (1990).

In conclusion, we note that admission of defendant's urinalysis results obtained pursuant to a parole agreement in his prosecution for possession of a controlled substance did not violate the fourth or fifth amendment rights retained by defendant, a parolee. The specimen was obtained as a result of a reasonable suspicion defendant had violated his parole, and such specimen was not sufficiently testimonial nor communicative to "incriminate" defendant. Accordingly, we affirm the denial of defendant's motion to suppress.

GARFF and RUSSON, JJ., concur.