2005 UT App 208

**STATE of Utah, Plaintiff and Appellee,**

v.

**Noe Rodriguez CARRENO, Defendant and Appellant.**

**No. 20030927–CA.**

Court of Appeals of Utah.

May 5, 2005.

Bernard L. Allen, Richards Caine & Allen, Ogden, for Appellant.

Mark L. Shurtleff, Attorney General, and Erin Riley, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, BENCH, and JACKSON.

OPINION

JACKSON, Judge:

¶1 Noe Rodriguez Carreno appeals his convictions of attempted aggravated murder, aggravated burglary, aggravated kidnapping, and interrupting a communication device. *See* Utah Code Ann. §§ 76–5–202, –6–203, –5–302, –6–108 (1999 & Supp.2000). We reverse and remand.

## BACKGROUND

¶ 2 In its entirety, the record discloses the following information: Carreno is a legal immigrant dairy farmer who cared for his three children while his wife abandoned the family in favor of methamphetamine. In October 2000, Kristy Lamb, Carreno's wife, returned to the home accompanied by two men. She demanded money from Carreno and became angry when he did not provide her with a satisfactory amount. The two men, Lee Duong and Gregorio Santos, assaulted and threatened Carreno at knifepoint. Carreno escaped unharmed, but Duong was arrested. Carreno believed that Duong was dangerous and involved in a gang. Thereafter, Carreno obtained a protective order against Lamb and began to carry his father-in-law's gun. None of this information was adduced at trial.

¶ 3 However, the trial record does extensively detail another incident between Carreno and Lamb: Late at night on November 26, 2000, Carreno went to Lamb's apartment carrying the gun. Unbeknownst to Carreno, Lamb was with Duong and another man, Able Carrazo. When Lamb did not answer the door, Carreno kicked the door open. A struggle ensued, and Duong punched Carreno. The testimony conflicts as to how and when, but it is clear that the phone was ripped out of the wall and Duong was shot.

¶ 4 Carreno was arrested, charged, and appointed counsel. Several months before trial, Carreno filed a motion to appoint an investigator. Initially, the trial court denied Carreno's motion as lacking the necessary information. Carreno then filed a supplement to renew the motion. At the hearing on the renewed motion, the prosecutor stipulated to the appointment of an investigator, on the condition that the investigator incur no more than $500 in costs. There is no indication of what position defense counsel took on the spending limitation. Regardless, the trial court granted the motion with the $500 limitation.

¶ 5 In his motion to appoint an investigator, Carreno indicated that he wanted to investigate Duong and Lamb's drug and gang connections. This information could establish (1) that Carreno carried the gun only to protect himself from Lamb's associates and the shooting was accidental and (2) that Duong and Lamb's recollection and perception of the events were compromised by their drug and alcohol intake. Carreno also wanted the investigator to study the layout of the apartment for evidence that Carreno could not have been responsible for the phone. He also wanted to interview additional witnesses regarding the inconsistencies in Lamb's, Duong's, and Carrazo's statements and to probe the allegation that Carreno fired a second shot and threatened Duong.

¶ 6 A jury convicted Carreno of all of the charges; Carreno now appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 7 Carreno asserts that the trial court improperly limited the expenses of an appointed investigator. "We will not reverse a trial court's disposition of a motion for appointment of an investigator absent a showing that the trial court abused its discretion." *State v. Hancock*, 874 P.2d 132, 135 (Utah Ct.App.1994).

## ANALYSIS

¶ 8 When society acts to deprive one of its members of his life, liberty or property, it takes its most awesome steps. No general respect for, nor adherence to, the law as a whole can well be expected without judicial recognition of the paramount need for prompt, eminently fair and sober criminal law procedures. The methods we employ in the enforcement of our criminal law have aptly been called the measures by which the quality of our civilization may be judged.

*Coppedge v. United States*, 369 U.S. 438, 449, 82 S.Ct. 917, 8 L.Ed.2d 21 (1961).

¶ 9 Recognizing the paramount importance of fairness in criminal trials, our legislature requires that "[e]ach county, city, and town shall provide for the defense of an indigent in criminal cases ... [by] provid[ing] the investigatory resources necessary for a complete defense." Utah Code Ann. § 77–32–301(3) (2003). "Trial courts are required to appoint an investigator for

indigent defendants when necessary for a complete defense." *Hancock*, 874 P.2d at 135. Yet, we have held that trial courts may place some conditions on the appointment of an investigator. *See id.* at 135–36. In *Hancock*, we upheld a trial court decision that required the defendant to pursue other available means of investigation before appointing an investigator. *See id.*

¶ 10 "The trial court's determination of whether to appoint an investigator must always focus on the facts of the case and never on the expense of such an appointment. . . . Budgeting for such appointments is the responsibility of city councils, county commissions, and state legislatures," not trial courts. *Id.* at 135 n. 3. "[T]rial courts should consider *only* the question of whether appointment of an investigator is necessary for a complete defense." *Id.* (emphasis added). The limit on expenditures is not an acceptable condition on the appointment of an investigator because it acts as a bar rather than a prerequisite. Thus, in focusing on the expenses of the investigator, rather than exclusively addressing the need for an investigator, the trial court abused its discretion.

¶ 11 We cannot say whether this was harmless error because we could do no more than imagine what the investigator without the trial court's severe limitation might have revealed. And, we cannot conclude that this was invited error because the record does not indicate that defense counsel lead the trial court into making the error. *See State v. Geukgeuzian*, 2004 UT 16, ¶¶ 9, 12, 86 P.3d 742. Accordingly, we must reverse and remand.

¶ 12 "Although resolution of the above issue is dispositive of the present case, where an appellate court finds that it is necessary to remand a case for further proceedings, it has the duty of 'pass[ing] on matters which may then become material.' " *Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 22, 20 P.3d 388 (alteration in original) (citation omitted).

¶ 13 Accordingly, we address Carreno's additional arguments. Carreno argues that a jury instruction violated his right not to testify. The instruction at issue advised the jury of a defendant's right to testify or to choose not to; Carreno did not request that the court give this instruction. The Utah Supreme Court has previously held that it is not an error to give such an instruction. *See State v. Nomeland*, 581 P.2d 1010, 1011–12 (Utah 1978). In fact, the supreme court characterized such an instruction as "helpful" and "in no manner prejudicial" to the defendant. *Id.* at 1012. Of course, where the defendant does not request the instruction, it would not be an error for the court to not give the instruction.[1] That is, the instruction is not required, if the defendant does not request it.

¶ 14 We reverse and remand.

¶ 15 I CONCUR: JUDITH M. BILLINGS, Presiding Judge.

BENCH, Associate Presiding Judge (dissenting):

¶ 16 I respectfully dissent.

¶ 17 The record does not reflect that Carreno objected below to the $500 limitation on investigator expenses.[2] Therefore, the only way we can address the issue is to determine that the trial court committed plain error or that exceptional circumstances are present. *See State v. Dean*, 2004 UT 63, ¶ 13, 95 P.3d 276. On appeal, Carreno does not make such an argument. Nonetheless, "[t]o demon-

---

1. Carreno also argues that another one of the jury instructions impermissibly emphasized the importance of majority over individual conclusions. This argument, even if adequately briefed, lacks merit and support.

   Also, because we are remanding for further consideration, Carreno's argument regarding the defectiveness of the information can be considered by the trial court, and if necessary, the prosecution should be afforded the opportunity to amend the information. *See State v. Strand*, 674 P.2d 109, 111 (Utah 1983). At the same time,

our remand makes Carreno's ineffective assistance of counsel claim moot.

2. Carreno also does not directly challenge the $500 limitation in his appellate brief. Though the majority opinion focuses on the money limitation, Carreno focuses on the assertion that the trial court erred by denying his first motion for an investigator. Even if the trial court committed error by denying the first motion, it was not prejudicial because the trial court granted Carreno's subsequent motion seven weeks prior to trial.

strate plain error, a defendant must establish that '(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant.'" *Id.* at ¶ 15 (quoting *State v. Holgate*, 2000 UT 74,- ¶ 13, 10 P.3d 346).

¶ 18 We cannot determine if the trial court committed an obvious error without an adequate record. "'When a defendant predicates error to this [c]ourt, he has the duty and responsibility of supporting such allegation by an adequate record.'" *State v. Linden*, 761 P.2d 1386, 1388 (Utah 1988) (quoting *State v. Wulffenstein*, 657 P.2d 289, 293 (Utah 1982)). The record, in this case, does not include a transcript of the hearing held on Carreno's motion for an investigator. "Although such hearing was apparently held ..., defendant failed to provide us with a transcript of that hearing." *State v. Blackwell*, 809 P.2d 135, 138 n. 4 (Utah Ct.App. 1991). Without a copy of the transcript, we cannot ascertain the trial court's reasoning for setting the $500 limitation. Therefore, without speculating, we cannot say that the trial court "focus[ed] on the expenses of the investigator, rather than exclusively addressing the need for an investigator," as the majority opinion asserts. "Because defendant failed to provide such a record to support his assertion ..., [we] 'assume the regularity of the proceedings below and affirm the judgment.'" *Id.* (quoting *State v. Robbins*, 709 P.2d 771, 773 (Utah 1985)); *see also State v. Garza*, 820 P.2d 937, 938 (Utah Ct. App.1991) (stating that where the defendant failed to provide us with a transcript from a motion to suppress hearing we must assume that the trial court's decision was not erroneous); *Linden*, 761 P.2d at 1388 ("Inasmuch as defendant has failed to provide an adequate record on appeal on this point, this [c]ourt presumes regularity in the proceedings below.").

¶ 19 Even if it could be said that the trial court committed an obvious error in limiting the expenses for an investigator, we can only reverse if the defendant demonstrates that the error was harmful. *See Dean*, 2004 UT 63 at ¶ 22, 95 P.3d 276. Carreno must there-

fore show specifically how he was prejudiced by the trial court's ruling on his request for an investigator. *See, e.g., United States v. Croft*, 124 F.3d 1109, 1125 (9th Cir.1997) ("Croft did not show the lack of extra funds unduly hampered her defense or denied her effective assistance of counsel under the Sixth Amendment."); *State v. Cote*, 27 Utah 2d 24, 492 P.2d 986, 987 (1972) ("The action of the trial court denying the defendant's application for appointment of an investigator at public expense was not prejudicial to the rights of the defendant."). Carreno, in his appellate brief, never indicates how he would have utilized an unlimited budget for investigation. We do not even know whether Carreno used the $500 he was allotted. He has done absolutely nothing to demonstrate how the lack of funds prejudiced his defense. "If the error was harmless, ... then a reversal is not in order." *State v. Nichols*, 2003 UT App 287, ¶ 48, 76 P.3d 1173 (quotations and citations omitted), *cert. denied*, 84 P.3d 239 (Utah 2003).

¶ 20 Rather than applying the traditional rules of appellate practice, the main opinion adopts the following per se rule: If the trial court allows appointment of an investigator and does anything to limit the amount of expenses allowed, the trial court has automatically committed reversible error. I dissent because I can find no basis in the law for such a harsh and wasteful rule.