2006 UT 59

**STATE of Utah, Plaintiff and Petitioner,**

v.

**Noe Rodriguez CARRENO, Defendant and Respondent.**

No. 20050591.

Supreme Court of Utah.

Oct. 3, 2006.

---

Mark L. Shurtleff, Att'y Gen., Erin Riley, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Randall W. Richards, Ogden, for defendant.

On Certiorari to the Utah Court of Appeals.

DURRANT, Justice:

## INTRODUCTION

¶ 1 The two issues upon which we granted certiorari review in this case are (1) whether the district court erred in placing a $500 limitation on reimbursable expenses for an investigator in Noe Carreno's first degree felony case, and (2) whether the court of appeals erred in failing to apply the plain error standard in reviewing the expense limitation issue. We reach only the first issue, however, because its resolution is dispositive.

¶ 2 The court of appeals essentially held that a district court may not consider cost when reviewing a motion to appoint an investigator. Although a court's primary inquiry is whether an investigator is necessary for a complete defense, Utah Code section 77–32–305.5 requires a court to consider investigator expense to some extent. In this case, Carreno failed to provide any record evi-

dence to establish that the district court gave improper weight to expense considerations in ordering the appointment of an investigator. Accordingly, we reverse the decision of the court of appeals and hold that the district court did not abuse its discretion in imposing an initial $500 limitation on reimbursable expenses in its order of appointment.

## BACKGROUND

¶3 When reviewing a jury verdict, we recite the facts in the light most favorable to that verdict.[1] On the night of the crime, Lee Duong and Abel Carrazco were at the apartment of Kristy Lamb, Carreno's wife, from whom he was separated at the time. Late that night, Carreno knocked on the door. Lamb looked out the peep-hole, saw that it was Carreno, and refused to open the door. Carreno started pounding on the door and, although Lamb was leaning against the door trying to prevent entry, forced the door open and entered the apartment.

¶4 Upon entering the apartment, Carreno pointed a gun at Lamb and Duong. Lamb ran over to the phone and tried to call 9-1-1, but Carreno pulled the phone jack out of the wall. After a struggle, Carreno shot Duong. The bullet went through Duong's arm, punctured his lung, and lodged near his spine. Duong ran out of the apartment and tried to get into an apartment across from Lamb's. As Duong ran away, Carreno attempted to pull Lamb out of her apartment. When she escaped, Carreno chased after Duong. Duong ran back to Lamb's apartment. As he was running, he heard another gunshot and heard Carreno say, "I'm going to kill you." Duong ran through the apartment and escaped out the back window. With Duong gone, Carreno grabbed Lamb's shirt and pulled her outside. Lamb saw a friend and yelled at him to call the police. At that point, Carreno let go of her, ran towards the parking lot, and drove away in a van.

¶5 Prior to trial, Carreno filed a motion to have an investigator appointed. The trial court denied this motion. Carreno later filed a second, more detailed motion to appoint an investigator. The minutes from a hearing on the motion indicate that the trial court informed Carreno at the hearing that he could "hire an investigator at a total cost of up to $500." The written order states that "[a]n investigator shall be retained to assist the defense in this matter in the initial sum of not more than $500.00." There is no record that Carreno objected to the $500 limitation and no record that Carreno requested additional funds. The case proceeded to trial, and a jury convicted Carreno of attempted aggravated murder, aggravated burglary, aggravated kidnaping, and interrupting a communication device.

¶6 On appeal, the court of appeals reversed Carreno's conviction without oral argument, concluding that the trial court abused its discretion by focusing on how much an investigator would cost rather than on whether an investigator was necessary.[2] The court of appeals further concluded that " '[t]rial courts should consider *only* the question of whether appointment of an investigator is necessary for a complete defense' " and held that a "limit on expenditures is not an acceptable condition on the appointment of an investigator."[3] The court of appeals then decided that it could not logically determine whether the trial court's error was harmless because it could not determine whether an investigator could have found exculpatory evidence absent the $500 limitation.[4] Having determined that a new trial was warranted on the expense-limitation issue, the court of appeals stated that Carreno's ineffective assistance of counsel claim was moot.[5] Judge Bench dissented from the majority opinion, arguing that the conviction should be affirmed because Carreno failed to preserve the issue by objecting to the $500

1. *State v. Casey*, 2003 UT 55, ¶2, 82 P.3d 1106.

2. *State v. Carreno*, 2005 UT App 208, ¶¶10–11, 113 P.3d 1004.

3. *Id.* ¶10 (emphasis added) (quoting *State v. Hancock*, 874 P.2d 132, 135 n. 3 (Utah Ct.App. 1994)).

4. *Id.* ¶11.

5. *Id.* ¶13 n. 1.

limitation and failed to show the elements necessary to establish plain error.[6] Judge Bench also expressed concern that the majority opinion created a per se rule that a trial court commits reversible error any time it imposes a limit on reimbursable expenses for an investigator.[7] We granted certiorari to review the court of appeals' decision.

## STANDARD OF REVIEW

■ ¶ 7 On certiorari, we "review the decision of the court of appeals and not that of the district court," and we grant no deference to the court of appeals' conclusions of law.[8] Our review consists of determining "whether the court of appeals accurately reviewed the trial court's decision under the appropriate standard of review."[9] For purposes of our analysis, we assume that the expense-limitation issue was preserved and, therefore, that an abuse of discretion standard, as was applied by the court of appeals, was the proper standard of review for assessing that issue.[10] We have jurisdiction pursuant to Utah Code section 78–2–2(3), (5).

## ANALYSIS

■ ¶ 8 A criminal defendant is entitled to assistance of counsel under the Sixth Amendment to the United States Constitution.[11] The United States Supreme Court has held that the Sixth Amendment applies to the states through the Fourteenth Amendment Due Process Clause and requires states to provide counsel to indigent defendants.[12] Furthermore, the "right to counsel includes effective assistance of counsel."[13] For counsel to be effective in the case of an indigent defendant, the state must provide a defendant with access to "the raw materials integral to the building of an effective defense."[14]

¶ 9 To provide indigent defendants with effective assistance of counsel consistent with their Sixth Amendment right, our Legislature passed the Utah Indigent Defense Act (the "Act").[15] The Act provides "access for indigents to the basic tools of defense."[16] Relevant to this case, the Act requires that a local government "provide [an indigent defendant with] the investigatory resources necessary for a complete defense."[17] As no party has claimed that any provision of the Act is unconstitutional under the federal or state constitutions, we need only consider whether the court of appeals correctly applied the Act.

¶ 10 We conclude that the court of appeals' decision is inconsistent with the plain meaning of the Act. We first examine whether the court of appeals' legal conclusion that a district court may not consider costs or limit reimbursable expenses when appointing an investigator is inconsistent with the Act. We then discuss whether, in the absence of the court of appeals' legal rule, the imposition of a $500 limitation in this case was nevertheless an abuse of discretion.

## I. A DISTRICT COURT MAY CONSIDER COSTS AND INITIALLY LIMIT REIMBURSABLE EXPENSES WHEN APPOINTING AN INVESTIGATOR

■ ¶ 11 The court of appeals erred in creating a rule that precludes district courts from considering cost when deciding a motion to appoint an investigator because such a

6. *Id.* ¶¶ 17–19 (Bench, J., dissenting).

7. *Id.* ¶ 20 (Bench, J., dissenting).

8. *State v. Ireland,* 2006 UT 17, ¶ 7, 133 P.3d 396 (internal quotation omitted).

9. *State v. Orr,* 2005 UT 92, ¶ 7, 127 P.3d 1213 (internal quotation omitted).

10. *State v. Cabututan,* 861 P.2d 408, 411–12 (Utah 1993).

11. U.S. Const. amend. VI.

12. *Gideon v. Wainwright,* 372 U.S. 335, 339–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

13. *State v. Burns,* 2000 UT 56, ¶ 23, 4 P.3d 795.

14. *Ake v. Oklahoma,* 470 U.S. 68, 76–77, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

15. Utah Code Ann. §§ 77–32–101 to –704 (2003 & Supp.2005).

16. *Burns,* 2000 UT 56, ¶ 24, 4 P.3d 795.

17. Utah Code Ann. § 77–32–301(3) (2003).

rule directly contradicts the Act. Our objective in interpreting a statute is to effectuate legislative intent, and that intent is most readily ascertainable by looking to the plain language of the statute.[18] In addition, "[w]e read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters."[19] The evolution of a statute through amendment by our Legislature may also shed light on a statute's intended meaning.[20]

¶ 12 In this case, although the primary purpose of the Act is to provide indigent defendants with access "to the basic tools of defense,"[21] the Legislature amended the Act in 1997,[22] placing various budgetary constraints on the provision and use of those tools.[23] The amendments to the Act gave the district court the responsibility to approve any departures from these budgetary constraints.[24]

¶ 13 One of the 1997 additions to the Act, Utah Code section 77–32–305.5, is central to our resolution of this case. It provides as follows:

(1) For the purposes of this section, an "extraordinary expense" means the collective expense which exceeds $500 for any particular service or item such as experts, investigators, surveys, or demonstrative evidence.

(2) The county or municipality shall reimburse expenses, exclusive of overhead and extraordinary expense not approved by the court in accordance with this chapter, reasonably incurred by assigned attorneys for indigent defendants.

(3) The assigned attorney shall file a motion with the court for approval of the proposed expenditure for any extraordinary expense before the expense is incurred. The motion shall be heard and ruled upon by a judge other than the trial judge if so requested by either party or upon the motion of the trial judge.[25]

By its terms, subsection 77–32–305.5(3) is intended to provide assigned counsel with an avenue for obtaining funds in excess of $500 for, among other things, investigators. Indeed, the section casts the court in the role of approving a "proposed expenditure for any extraordinary expense before the expense is incurred."[26] Thus, under subsection 77–32–305.5(3), defense counsel should make a motion that requests a specific initial amount of funds. Assessing the merit of such a motion necessarily requires a judge to consider expense, a requirement that is in direct contradiction to the court of appeals' conclusion that district courts may not consider costs or limit reimbursable expenses when appointing an investigator. The court of appeals' holding would require that the district court, upon finding an investigator necessary for a complete defense, write a blank check for investigative purposes to the defendant on behalf of the county or municipality. This requirement is clearly inconsistent with the 1997 additions to the Act.

¶ 14 That a court must consider cost in appointing an investigator is also consistent with the Legislature's cost-control intent, which is evidenced both by section 77–32–305.5 and another section added by the 1997 amendment, section 77–32–304.5. Subsection 77–32–304.5(f) provides for a compensation limit on defense counsel appointed by the court depending on the severity of the alleged crime and the type of proceeding, but allows a court to prospectively approve fur-

**18.** Burns, 2000 UT 56, ¶ 25, 4 P.3d 795.

**19.** Bd. of Educ. v. Sandy City Corp., 2004 UT 37, ¶ 9, 94 P.3d 234.

**20.** See 1A Norman J. Singer, Statutes and Statutory Construction §§ 22.29–22.30 (6th ed.2002) (discussing the presumption that an amendment was intended to change the prior statute; also discussing other tools of construction applicable to amendments).

**21.** Burns, 2000 UT 56, ¶ 24, 4 P.3d 795.

**22.** Act of March 5, 1997, ch. 307, §§ 1–5, 1997 Utah Laws 1181, 1181–82.

**23.** Id. §§ 3–4, (codified as amended at Utah Code Ann. §§ 77–32–304.5, –305.5).

**24.** Id.

**25.** Utah Code Ann. § 77–32–305.5 (2003) (emphasis added).

**26.** Id.

ther compensation where necessary.[27] Thus, similar to section 77–32–305.5, section 77–32–304.5 limits defendants' reimbursable expenses and authorizes courts to approve the reimbursement of expenses beyond the limits where necessary. These two sections therefore establish the Legislature's intent that a district court have a role in limiting the reimbursement of expenses incurred by indigent defendants.

¶ 15 In sum, the Act plainly intends to give the district court the authority to consider cost and limit reimbursable investigator expenses so long as all resources necessary for a complete defense are provided. Accordingly, the court of appeals' per se rule prohibiting district courts from considering cost or limiting reimbursable investigator expenses is error unless it is required by the United States or Utah Constitutions.

¶ 16 The court of appeals does not claim, however, that its conclusion is required by either constitution. Rather, the court of appeals' decision in this case cites only to a prior court of appeals decision, *State v. Hancock.*[28] *Hancock* does not cite to either constitution to support its statement in dicta that a court must not consider cost in appointing an investigator. Indeed, *Hancock,* decided in 1994, merely cites the version of the Act in effect at that time.[29] As discussed above, the Legislature amended the Act in 1997, and that amendment authorizes a court to consider investigator expenses.[30] Accordingly, the court of appeals' reliance on *Hancock* is misplaced.

¶ 17 Ultimately, neither the court of appeals nor Carreno has directed us to any authority for the proposition that the federal or state constitutions prohibit district courts from considering cost or limiting reimbursable investigator expenses. Thus, because the court of appeals' conclusion that a district court may not consider cost or limit reimbursable investigator expense is in conflict with the Act, that conclusion is in error.

## II. THE DISTRICT COURT REASONABLY IMPOSED AN INITIAL $500 LIMITATION ON REIMBURSABLE INVESTIGATOR EXPENSE

■ ¶ 18 Having determined that the court of appeals erred in creating a per se rule against limitations to reimbursable investigator expenses, we now consider whether the district court nevertheless abused its discretion in setting an initial limitation of $500. Although a court must consider cost when deciding whether to approve an expenditure over $500, the threshold inquiry is still whether investigatory resources are necessary for a complete defense.[31] In essence, regardless of the cost, if the resources are necessary for a complete defense, the court must approve them. Extending this reasoning to the Act, it would be inappropriate to set an absolute cap of reimbursable expenses for investigative purposes. Rather, a defendant should always have the opportunity to request approval for additional expenditures, and the court must approve such requests to the extent necessary for a complete defense. By requiring the court to approve extraordinary expenditures in advance, section 77–32–305.5 not only protects the county or municipality from paying or contesting unnecessary expenses, but also gives the investigator and appointed counsel a measure of security that they will not need to defend the reasonableness of their expenses after the expenses have been incurred. A motion to appoint an investigator for $500 or less, although not required before a defendant incurs the expense, offers similar protections when filed and granted before such time.

¶ 19 Turning to the facts of this case, there is simply no record evidence to support a conclusion that the district court erred in placing the initial $500 limitation on reimbursable investigator expenses. First, as we explain above, the court of appeals erred in concluding that a district court must "*exclusively* address[ ] the need for an investiga-

---

27. *Id.* § 77–32–304.5(f) (2003).

28. *State v. Carreno,* 2005 UT App 208, ¶¶ 9–10, 113 P.3d 1004 (citing *State v. Hancock,* 874 P.2d 132, 135–36 & n. 3 (Utah Ct.App.1994)).

29. *Hancock,* 874 P.2d at 135 n. 3.

30. *Supra* ¶¶ 13–15.

31. Utah Code Ann. § 77–32–301(3) (2003).

tor." [32]  Because Carreno failed to include in the record a transcript of the hearing on his motion to appoint an investigator, the court of appeals could only speculate that the district court unduly "focus[ed] on the expenses of the investigator." [33]  That speculation was unjustified, however, because, in the absence of a record, "we must assume the regularity of the proceeding below." [34]  In other words, we must assume that the district court gave appropriate weight to the threshold question of whether an investigator was necessary. Indeed, the district court concluded that an investigator was necessary, and, accordingly, allocated funds for that purpose.

¶ 20 Second, there is nothing in the record to support the court of appeals' statement that the $500 limitation "acts as a bar rather than a prerequisite." [35]  This statement suggests that the $500 limit was absolute.  To the contrary, the written order refers to the $500 limitation as merely an "initial sum." Thus, upon exhaustion of the initial funds, Carreno was free to request additional funds. But there is nothing in the record to suggest that Carreno either exhausted the $500 provided [36] or requested more at any time.[37]

¶ 21 Under these circumstances, placing an initial limit of $500 on reimbursable investigator expenses is not error.  Carreno's motion did not contain a specific request or budget.  This put the district court in the difficult position of either coming up with a limit with little-to-no information, or giving Carreno a blank check on behalf of the county.  As discussed above, the blank-check option is at odds with the Act.[38] Thus, the district court was left looking for a reasonable limitation.  In this circumstance, the court reasonably used the $500 limitation from section 77–32–305.5 as a starting point. Indeed, the use of the word "initial" in the written order suggests that Carreno was free to request more funds if necessary.

¶ 22 Yet Carreno argues that the district court erred in setting the limitation at $500 because his request merited a larger initial sum.  Carreno first argues that because section 77–32–305.5 does not require counsel to move for funds for an investigator unless the expense is anticipated to exceed $500,[39] the mere fact that he moved for an investigator implies that he was requesting more than $500.  He next argues that the number of issues on which he requested investigative assistance makes it unlikely that Carreno agreed to the $500 limitation at the hearing. Finally, Carreno claims that because the legal expenses required to petition for an investigator are more than $500, the district court's ruling results in a net loss to the public defender.  We address each of these arguments in turn.

■ ¶ 23 First, Carreno argues that his motion to appoint an investigator should have been interpreted as a motion for extraordinary expenses because section 77–32–305.5 does not require a motion for anything less. A motion to appoint an investigator is not necessarily synonymous, however, with a motion for extraordinary expenses.  Under section 77–32–305.5, no investigator expense is reimbursed unless it is "reasonably incurred." [40]  Additionally, for an extraordinary expense, e.g., investigator expenses beyond $500, a defendant must obtain approval from the court "before the expense is in-

---

32.  *See Carreno,* 2005 UT App 208, ¶ 10, 113 P.3d 1004 (emphasis added).

33.  *See id.*

34.  *State v. Robbins,* 709 P.2d 771, 773 (Utah 1985); *accord State v. Cramer,* 2002 UT 9, ¶ 28, 44 P.3d 690 ("[I]f an appellant fails to provide an adequate record on appeal, this court must assume the regularity of the proceedings below.").

35.  *Carreno,* 2005 UT App 208, ¶ 10, 113 P.3d 1004.

36.  *See Barney v. State,* 698 S.W.2d 114, 126 (Tex.Crim.App.1985) (holding that the district court did not abuse its discretion in denying defendant's motion for additional funds where defendant had not shown exhaustion of the $500 granted).

37.  *See Roberts v. State,* 252 Ga. 227, 314 S.E.2d 83, 92 (1984) (holding no error where the court initially granted $500 for an investigator, and defendant made no subsequent request for additional funds).

38.  *Supra* ¶¶ 14–15.

39.  Utah Code Ann. § 77–32–305.5 (2003).

40.  *Id.*

curred."[41] Accordingly, the defense need not necessarily seek prior approval from the court to later be reimbursed for investigator expenses of $500 or less. Nevertheless, the defense may seek prior approval of non-extraordinary expenses to avoid the risk that a court might find the expenditure unreasonable and, accordingly, withhold reimbursement.

¶ 24 Defense counsel's motion in this case focuses solely on the necessity of investigating possible exculpatory evidence without any estimate of the expense of such an investigation. In the motion, defense counsel makes no mention of the extraordinary expenses discussed in Utah Code section 77–32–305.5, but only quotes the Act as requiring a municipality to "provide the investigatory resources necessary for a complete defense."[42] Additionally, there is no record that Carreno objected when the court set the limit at $500. Thus, the district court could reasonably have concluded that Carreno was only seeking prior approval of a non-extraordinary expense.

¶ 25 Second, Carreno urges us to infer that he objected to the $500 limit because, given the numerous issues he wished to investigate, he certainly would not have agreed to the $500 limitation. Such an inference would directly contradict the rule that, in the absence of an adequate record, we assume the regularity of the proceeding.[43] Consequently, we must conclude that the court was not informed that counsel was dissatisfied with the initial limitation.

¶ 26 Finally, Carreno argues that because the legal fees for preparing a motion to appoint an investigator would exceed $500, it would be inefficient to make a motion for less than that amount. But the fact that a motion is inefficient does not compel our rewriting the motion to make it efficient. Rather, where the motion did not include a proposed budget, the court reasonably imposed an initial limitation on reimbursable investigator expenses. Thus, we hold that the district court did not abuse its discretion in placing an initial $500 limitation in its order appointing an investigator.

## CONCLUSION

¶ 27 The court of appeals erred in reversing Carreno's conviction. Section 77–32–305.5 authorizes the district court to assess both the necessity of an investigator and the reasonableness of the expense. This authorization is inconsistent with the court of appeals' decision barring a district court from considering expense at all. Furthermore, the district court did not abuse its discretion in setting the initial limitation at $500 because the record includes no suggestion that a greater initial amount was necessary and no indication that Carreno either exhausted the $500 or requested more. We therefore reverse the decision of the court of appeals and remand to the court of appeals to consider Carreno's ineffective assistance of counsel claim.

¶ 28 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.

---

**41.** *Id.*

**42.** *Id.* § 77–32–301(3) (2003).

**43.** *Robbins,* 709 P.2d at 773.